THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ERNIE SLAUGHTER, Defendant-Appellant.

Third District   No. 79-222

Opinion filed May 7, 1980.

Robert Agostinelli and Charles Hoffman, both of State Appellate Defender's Office, of Ottawa, for appellant.

Edward F. Petka, State's Attorney, of Joliet (John X. Breslin and Terry A. Mertel, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

Following a jury trial in the Circuit Court of Will County, the defendant, Ernie Slaughter, was found guilty of escape and intimidation and was sentenced to concurrent terms of six years for escape and four years for intimidation. These sentences are to be served consecutive to a prior term imposed by the Circuit Court of Cook County.

On appeal, the defendant raises a number of issues: (1) whether the trial court abused its discretion in denying the defendant's motion to substitute counsel, or, in the alternative, in denying the defendant the right to proceed *pro se*; (2) whether the prosecutor's remarks during opening and closing arguments were so improper as to deny the defendant a fair trial, and, thus, to constitute reversible error; more specifically, whether it was prejudicial error for the prosecutor to introduce statements concerning the nature of the defendant's earlier

conviction and incarceration; (3) whether it was prejudicial error for the prosecutor to express his personal opinions regarding the defendant's guilt; and (4) whether the prosecutor's references to the defendant's absence from the courtroom during closing arguments was prejudicial. According to the State, the issues raised concerning the prosecutor's remarks during opening and closing arguments have been waived, because the defense counsel either failed to object to them during trial or to include them in his post-trial motion.

The defendant was an inmate at Stateville Penitentiary when, on April 12, 1978, he was charged by indictment with the offenses of escape and intimidation. The case proceeded to a jury trial on October 24, 1978. At that time, the defendant was represented by counsel from the public defender's office.

Following opening statements by the prosecutor and by the defense counsel, the State presented its case, consisting of the testimony of two witnesses. The first witness was Stateville correctional officer William Buffington, one of two officers assigned to medical furlough on the date in question, May 19, 1978. Officer Buffington related how the defendant had broken free and started to run as he and another inmate were about to leave St. Joseph's Hospital in Joliet to return to Stateville.

The defendant managed to free one hand from the cuff of the security belt he was wearing as he ran from the hospital and into Joliet West High School. There the defendant entered a classroom and emerged holding a girl by the arm. The girl, Kristine De Salvo, was the other State witness.

She recalled that the defendant told the other people to stay away and then told her that if she did not tell them to get away that he would hurt her. After she did as she was told, the defendant whispered in her ear that he would not hurt her and that he would let her go. Then the defendant kissed her and pushed her away from him. Kristine testified that she was shaken but was not injured in any way.

At the end of the State's case, a certified copy of conviction and mittimus, demonstrating that the defendant had been sentenced to a term of imprisonment of 100 to 300 years, was admitted into evidence. The jury was then released and the court adjourned until 1:30 p.m.. that afternoon.

When the proceedings resumed that afternoon, the defense moved for a directed verdict. After the motion was denied by the court, the defendant addressed the court and asked that an attorney other than the public defender be appointed to represent him. The court inquired whether there was any specific reason for such a substitution and was informed that the defendant did not believe his counsel was "asking the

witness precisely questions [*sic*]." The trial court denied the defendant's motion, indicating that it had not observed any impropriety or incompetence.

Because the series of exchanges which took place in the courtroom following the Judge's denial of the defendant's motion to substitute counsel are critical to the issues of whether the trial court abused its discretion in denying the defendant the right to be represented by other counsel or to proceed *pro se*, those exchanges are quoted below:

"THE COURT: Fine. I can find no ground with which to grant you that relief. The State's case is over and I suppose we could come to some agreement as to—well, I don't even know about that. You're not getting another attorney. You can make up your mind whether you want to testify or whether you don't want to testify. You're not getting another attorney at this stage.

THE DEFENDANT: You don't need to keep me in the courtroom, then.

THE COURT: Well, I don't know if there is any legal necessity to keep him in the courtroom.

PROSECUTOR: In fact, the law is he has the right not to be present if he wishes.

THE COURT: That is up to you. I would think the jury would be more friendly to you if you were here. But perhaps you have the right not to be here if you don't want to. Let me call about a five minute recess. You talk to your attorney.

If you're still of that mind, the Court will probably allow that request, as to whether you can leave the courtroom. You better talk to him anyway, just so I know you at least have been instructed as to the law. Whatever you want to do, you may have that right. I don't know. Court's in a five minute recess.

(Brief recess.)

THE COURT: Is the defense going to present any testimony, Mr. Defense Counsel?

DEFENSE COUNSEL: Mr. Slaughter, do you wish to testify in your own behalf?

THE DEFENDANT: I just want another lawyer, period.

DEFENSE COUNSEL: Your Honor, we have no witnesses to present.

PROSECUTOR: Does Mr. Slaughter have anything else to say at this time?

THE COURT: Did you say wanted another lawyer? I have already denied that motion. Anything else?

DEFENSE COUNSEL: Anything else?

92

THE COURT: Fine. You can bring the jury in.

DEFENSE COUNSEL: I believe so. Mr. Slaughter, do you want to testify?

THE DEFENDANT: I want to testify but I don't want you as my lawyer.

THE COURT: Fine, okay.

PROSECUTOR: State is going to have to object under the circumstances as previously stated.

THE COURT: Fine. You can bring the jury in.

PROSECUTOR: Yes, your Honor.

THE DEFENDANT: What you all going to do now?

THE COURT: You're going to testify.

THE DEFENDANT: I want a lawyer.

THE COURT: You have your lawyer. We're going to allow you to testify if you so desire.

DEPUTY DUER: Mr. Slaughter—

THE DEFENDANT: Come on.

THE COURT: Take him, take him. You want to go unless you have a lawyer, is that correct? Let him go.

THE DEFENDANT: I want to take a jury trial and don't want that lawyer present. I don't want you to violate my rights no more.

THE COURT: Fine. Show that in open Court that defendant indicates that he does not want to testify.

THE DEFENDANT: I don't say that; I want to testify.

THE COURT: Unless he has another attorney.

THE DEFENDANT: I want to testify with attorney, not that one.

THE COURT: With another attorney, is that correct?

THE DEFENDANT: That is correct.

THE COURT: You won't testify as long as this defense counsel is still your counsel?

THE DEFENDANT: That is right.

THE COURT: And you don't want to testify by yourself?

THE DEFENDANT: (No response.)

THE COURT: Okay, fine."

■■ Based on the above-quoted passage, the defendant argues strongly on appeal that the trial court abused its authority in not allowing the defendant to proceed *pro se* following the denial of the defendant's motion for substitution of counsel. However, a careful reading of the record indicates that the defendant never made a request to proceed *pro se*. Rather, he persisted in his request for a substitution of counsel as a prerequisite to the presentation of any testimony on his behalf. The record reveals that the court several times offered to allow the defendant

to take the stand and testify on his own behalf. The defense suggestion that the court denied him his right to proceed *pro se* is not well taken. The defense argues that the court ought to have clearly informed the defendant of his right to proceed *pro se*, explaining to him the disadvantages of such representation. (*Cf. Chapman v. United States* (5th Cir. 1977), 553 F.2d 886.) While a better procedure would have been for the court to expressly inform the defendant of his right to proceed *pro se* and explain the disadvantages of such a course, we do not find that a failure to do so, under the circumstances, constituted error. *Faretta v. California* (1975), 422 U.S. 806, 834-36, 45 L. Ed. 2d 562, 581-82, 95 S. Ct. 2525, 2540-41.

As to the defense argument that the court abused its discretion in denying the defendant a substitution of defense counsel, we find no abuse of discretion.

■ It is well established that an indigent defendant is entitled to counsel other than a public defender upon a showing of good cause (*People v. Johnson* (1974), 24 Ill. App. 3d 152, 320 N.E.2d 69); it is equally clear that, absent such a showing, it is within the trial court's discretion to deny such a request (*People v. Drew* (1976), 36 Ill. App. 3d 807, 345 N.E.2d 45). This is particularly true once the trial has begun with the defendant being represented by an appointed public defender. The defendant's right to discharge his appointed counsel and to substitute another attorney or to proceed *pro se* is sharply curtailed. There must be a showing that the prejudice to the defendant's interests in continuing with the same attorney overbalances the potential disruption to the proceedings already in progress. In determining the correct balance, considerable weight is given to the trial judge's assessment of the situation.

In ruling on a motion to substitute attorneys once trial has begun, the trial court must weigh several factors, including the reason for the request, the quality of counsel representing the moving party, and the party's prior proclivity to substitute counsel. *People v. Bell* (1977), 49 Ill. App. 3d 140, 363 N.E.2d 1202.

In the present case, the defendant did not move to substitute counsel until the State had rested its case and defense counsel had indicated that the only defense witness would be the defendant. Prior to his motion, the defendant had made no objections to defense counsel's representation of his case except to indicate, at the close of the State's case, that counsel had not questioned the witnesses "precisely." Furthermore, the defendant requested appointment of an attorney other than the public defender. Such a request is seldom granted absent a showing of potentially great harm to the defendant's legitimate interests. *People v. Gardner* (1977), 47 Ill. App. 3d 529, 362 N.E.2d 14.

■ The defendant's untimely motion for new counsel was found to be spurious by the trial court, which found no impropriety or incompetence on the part of the defense counsel. We concur with the trial court's decision and find no abuse of its discretion in denying the defendant's motion to substitute counsel.

■ In his reply brief, the defendant raises yet another issue pertaining to the defense counsel, namely the issue of the defense counsel's effectiveness. As indicated in the State's response to the defendant's reply brief, the issue of the defense counsel's effectiveness is not properly before this court, since an issue cannot be raised for the first time in a reply brief on appeal. *People v. Coleman* (1979), 78 Ill. App. 3d 989, 398 N.E.2d 185; *People v. Taylor* (1970), 123 Ill. App. 2d 430, 258 N.E.2d 823.

■ ■ The defendant next argues on appeal that the remarks of the prosecutor to the jury during opening and closing arguments were so prejudicial as to deny the defendant a fair trial. The State initially takes the position that the failure of the defense counsel to object during trial or to raise these issues in post-trial motions effectively waives them on appeal. While the failure by defense counsel to object at trial to improper closing and opening argument by the prosecutor operates as a waiver of the issue on review, in the instant case we find that the improper argument constitutes serious prejudicial error, affecting the fairness of the trial to the extent that application of the plain error doctrine is called for in the case. Ill. Rev. Stat. 1977, ch. 110A, par. 615; *People v. Natoli* (1979), 70 Ill. App. 3d 131, 387 N.E.2d 1096; *People v. Richardson* (1977), 49 Ill. App. 3d 170, 363 N.E.2d 924.

During his opening statement, the prosecutor apprised the jury that at the time of the alleged escape and intimidation, the defendant had been in custody at Stateville, and then added, "He at that time was doing an unusually long term of 100 to 300 years for murder and a related burglary, and being eligible for parole in a little over eleven years." In concluding his opening statement, the prosecutor again mentioned the length of the current sentence the defendant was serving, and he told the jury that after they heard the evidence, they would feel, as he did, that the defendant was guilty.

In his closing argument, the prosecutor once again referred to the length of the defendant's sentence and to the crimes for which he had been incarcerated. In addition, in the course of his rebuttal argument, the prosecutor commented on the defendant's absence during the latter stages of trial. Furthermore, the prosecutor told the jury that if they didn't return a guilty verdict, no one else would ever be convicted in a similar case.

Although any one of the prosecutor's remarks alone may not have been sufficient to constitute reversible error, the cumulative effect of those

remarks so prejudiced the defendant that we believe he was deprived of a fair trial.

It is well settled that evidence of other crimes, unrelated to the charges for which a defendant is on trial, is inadmissible. (*People v. Smith* (1976), 39 Ill. App. 3d 732, 350 N.E.2d 791.) In the instant case, the defendant was charged with escape under section 3—6—4(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, par. 1003—6—4(a)). The fact of the defendant's prior conviction was competent and was, in fact, a necessary element of the State's case to prove that the defendant was in the custody of the Department of Corrections at the time of the alleged escape. But it was not necessary to reveal the nature of the prior conviction or to stress the length of the sentence served.

■■ The traditional rule in Illinois has long been that a prior conviction can be proved only by the record or an authenticated copy showing the caption, return of the indictment in open court by the grand jury, the indictment and arraignment of the defendant, paneling of the jury, and the final judgment of the court. (*People v. Lane* (1948), 400 Ill. 170, 79 N.E.2d 65; *People v. Moore* (1979), 72 Ill. App. 3d 462, 391 N.E.2d 139.) The record of the defendant's earlier conviction and sentence is sufficient to establish the necessary presumptions that the defendant was incarcerated at the time of the alleged escape. In the present case, a certified copy of conviction and mittimus was introduced at the conclusion of the State's case, showing that the defendant was sent to prison for 100 to 300 years.

■■ Defendant argues that the prejudicial portions of the certificates, namely, the nature of the defendant's prior conviction and the length of the sentence imposed, should have been deleted, as is the practice in some Federal and State courts. (*United States v. Spletzer* (5th Cir. 1976), 535 F.2d 950; *Fouts v. State* (Fla. App. 1979), 374 So.2d 22.) We note that such a procedure would allow the State to establish prior conviction and incarceration, some of the necessary elements of escape, while also preventing the jury from hearing the potentially prejudicial facts as to the nature of the earlier offense and the sentence imposed. In the instant case, no proper purpose was served by informing the jury of the defendant's prior murder conviction or of his 100 to 300 year sentence. The only effect of allowing the particulars of the prior offense into evidence was that of prejudicing the defendant in the jury's eyes. While one appellate opinion has asserted that it is best to allow the trial court discretion in deciding what portions of the record of the prior conviction will be admitted (*People v. Arbuckle* (1966), 69 Ill. App. 2d 251, 215 N.E.2d 825), the better practice, we believe, is that referred to and outlined in *United States v. Spletzer* and *Fouts v. State*. Such procedure in no way hampers the State in its proof of the escape charge and it avoids the serious

potential for prejudice inherent in allowing the jury to be informed of the nature of the prior offense and the punishment.

In addition to the prejudice from allowing the jury to be informed of the murder conviction and the 100 to 300 year sentence, there were also the comments made by the prosecutor during opening and closing arguments emphasizing those facts. The prosecutor's repeated assertions served no other purpose than, potentially, to inflame the passions of the jury and prejudice the defendant in their eyes. *People v. Galloway* (1956), 7 Ill. 2d 257, 131 N.E.2d 474; *People v. Lurry* (1979), 77 Ill. App. 3d 108, 395 N.E.2d 1234.

The remarks of the prosecutor regarding the defendant's earlier conviction would not alone be sufficiently prejudicial as to constitute reversible error. However, the prosecutor also indicated to the jury his personal belief regarding the defendant's guilt and referred to the defendant's absence during closing argument in such manner as to draw attention to the defendant's failure to testify. The combined effect of the prosecutor's improprieties was sufficiently prejudicial as to deprive the defendant of a fair trial.

During his opening statement, the prosecutor stated "* * * after you hear the evidence you will feel as I do that the defendant is guilty * * *" and in his closing argument the prosecutor declared, "But I say he did it and your verdict should reflect that he did it * * *." It is improper for a prosecutor to inform the jury of his personal opinion concerning the defendant's guilt, unless the prosecutor states or it is apparent, that such opinion is based solely on the evidence. (*People v. Monroe* (1977), 66 Ill. 2d 317, 362 N.E.2d 295.) In the present case, it is not apparent, nor does the prosecutor state that his opinion is based solely on the evidence. ■ Added to that improper commentary by the prosecutor is the following, in closing argument:

> "Very briefly, we know that Mr. Slaughter is not here, he chose not to attend. He doesn't care. And I ask you to take that into account when you come to your verdict. He doesn't mind what goes on at this point."

The State argues that this statement is fair comment on the defendant's absence during the latter stages of the trial, and that it is not a comment on the defendant's failure to testify. The State argues its admissibility as a comment on the defendant's demeanor and attitude. We cannot agree. The effect of the statements by the prosecutor is to place an unfavorable aspect on the defendant's failure to remain in court and his failure to take the stand in his own behalf. Such comment, whether direct or, as here, indirect, aimed at a defendant's failure to testify on his own behalf is improper. *People v. Lee* (1976), 44 Ill. App. 3d 43, 357 N.E.2d 888.

■■ In addition to the seriously prejudicial remarks, concerning the

defendant's prior conviction and sentence, concerning the prosecutor's expressed personal belief as to the defendant's guilt, and concerning the comments on his failure to testify, there are other lesser improprieties evident in the record. The prosecutor asked the jury: "How would you like to have your daughters in that situation where he grabs her and trys to kiss her on the mouth?" He later cautioned the jury: "And if you don't come back with a verdict of guilty in this case, there will be no way that another jury hearing a case like this could find a guy guilty." While these remarks would not constitute reversible error by themselves, they are improper and serve to further demonstrate the overall prejudice to defendant from prosecutor's comments.

For the foregoing reasons, the judgment of the Circuit Court of Will County is reversed, and the cause is remanded for a new trial.

Reversed and remanded.

STENGEL and BARRY, JJ., concur.