4

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GLENN A. ORRS, Defendant-Appellant.

Third District    No. 79-116

Opinion filed August 7, 1980.

BARRY, J., dissenting.

Robert Agostinelli and Verlin R. F. Meinz, both of State Appellate Defender's Office, of Ottawa, for appellant.

Michael M. Mihm, State's Attorney, of Peoria (John X. Breslin, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

After trial by jury, Glenn A. Orrs, defendant, was convicted of the offense of felony escape and was sentenced to a term of five years' imprisonment to run consecutively with terms he was already serving.

The evidence at defendant's trial disclosed that he had been convicted of four charges of burglary and was serving four concurrent terms of from three to nine years of imprisonment. During his incarceration he was assigned to the Peoria Community Correctional Center, and on May 20, 1978, having been granted a "work release," he was employed at a facility in Peoria known as the Faith, Hope, Love and Christ Christian Mission. At approximately 4:10 p.m. on said date, a resident counselor from the Peoria Community Correctional Center arrived at the mission to pick up the defendant. The defendant asked if he could have a few more minutes to complete his work, which request was granted by the counselor. After 25 minutes the defendant failed to come out of the mission, so the counselor entered the building in search of him. The defendant had fled and never returned to the correctional center.

The statutes under which the defendant was charged and convicted provide that:

> "A person convicted of a felony, or charged with the commission of a felony who intentionally escapes from any penal institution or from the custody of an employee of that institution commits a Class 2 felony." Ill. Rev. Stat. 1977, ch. 38, par. 31—6(a).

The defendant raises several issues in this appeal, the first being that his conviction should be reversed since the State's proof did not establish that his conduct constituted an escape.

The instant case is strikingly similar to *People v. Cole* (1980), 84 Ill. App. 3d 347. In *Cole* this court determined that a defendant serving a sentence for burglary at the Peoria Community Correctional Institute committed the offense of felony escape when he refused to return to the correctional center when on furlough and when ordered to do so by a counselor.

In the instant case the defendant, in an effort to buttress his argument that he did not commit the act of escape, argues that the correctional center was not a penal institution, nor was he in the custody of an employee of such institution. It is the defendant's argument that the correctional center is a work-release facility of the Department of Corrections and hence is not a penal institution within the statutory definition of such. A penal institution is defined as:

> "* * * a penitentiary, state farm, reformatory, prison, jail, * * * *or other institution for the incarceration or custody of persons under sentence for offenses* or awaiting trial or sentence for offenses." (Emphasis added.) Ill. Rev. Stat. 1977, ch. 38, par. 2—14.

As we interpret defendant's argument, it is not denied that the correctional center is an institution, but it is his contention that it is not a penal institution because the offenders assigned there are not under immediate, actual and physical restraint such as prisoners housed in cells in a walled penitentiary. For purposes of rehabilitation and hopefully for an easier and successful transition into society, a correctional center does provide its inmates with a great latitude as far as freedom of movement is concerned, and the center provides its inmates with a living arrangement and atmosphere which is far less institutionalized than that of a high security prison. These differences, however, do not change its status to that of a nonpenal institution. Such a center is still under the direction of a warden, guards are present, and its inmates are sentenced law violators who are not there voluntarily. The inmates have only such freedom of movement and work opportunities as are provided to them by the supervisory officials. The poet Richard Lovelace was correct in his observation that "Stone walls do not a prison make—Nor iron bars a cage—." A correctional center falls within the definition of a penal institution as statutorily defined in section 2—14 of the Criminal Code of 1961. Ill. Rev. Stat. 1977, ch. 38, par. 2—14.

We further find no merit in the defendant's assertion that he was not in custody of an employee of the correctional center. Though referred to as a resident counselor rather than a guard, the employee who called at the mission for the purpose of returning the defendant to the center had

custody of the defendant. Such custody was acknowledged by the defendant when he requested of the counselor that his return to the center be delayed for a few minutes. When the defendant disobeyed and fled, he committed an escape just as effective as one who obtained freedom by wall scaling, tunneling or through the use of force.

The defendant assigns as reversible error the trial court's action in permitting a State witness to testify that the Peoria Correctional Center was a penal institution and also the failure of the court to instruct the jury regarding the definition of a penal institution.

It is the defendant's theory that when a supervisor of the correctional center testified that the center was a penal institution, such testimony was a conclusion going to the ultimate fact, which should have been determined by the jury. We harbor serious doubts as to whether the statutory definition of a penal institution is a question of fact rather than one of law, and it is apparent that counsel for the defendant must also harbor some doubt, since, as previously noted, he peculiarly argues that as a matter of law the Peoria Community Correctional Center is not a penal institution, but as to the issue under consideration takes a contrary view or position by asserting that such determination is one of fact to be decided by a jury.

Assuming *ad arguendo* that whether the center was a penal institution was a question of fact, the testimony of the supervisor was nevertheless harmless beyond reasonable doubt since the record is so replete with testimony describing the center, its purpose and operation, that it can only be concluded that the jury would have concluded that the center was penal in nature without the complained of opinion testimony.

As to the defendant's argument that error was committed by the court's failure to instruct the jury on the statutory definition of a "penal institution," it should first be noted that if such question is one of law then no instruction was necessary. Whether such question is one of law or fact is immaterial in the instant case, since the defendant has waived any error by his failure to tender such an instruction and further failed to object to the lack of such an instruction in his post-trial motion. (See *People v. Roberts* (1979), 75 Ill. 2d 1, 387 N.E.2d 331.) The defendant now claims that an instruction as to the definition of "penal institution" was necessary. If necessary, he had the affirmative duty to tender it, and failure to do so results in a waiver. Supreme Court Rule 451(c) (Ill. Rev. Stat. 1977, ch. 110A, par. 451(c)), relied on by the defendant, is of no assistance to him, for the rule grants relief only for the failure to object, not for failure to tender an instruction. We fail to find any merit in defendant's claim of error regarding the trial court's failure to instruct the jury as to the definition of "penal institution."

The defendant further argues that his conviction should be reversed

since the trial court erred in denying his motion to strike surplusage in the indictment and for also overruling his objection to the State proving four separate felonies for which he was imprisoned.

The surplusage complained of was an averment in the indictment that he had been convicted of burglary. It was the defendant's argument before the trial court, and now before this court, that the specific crime, to wit burglary, should not have been disclosed, but instead an averment that he had committed a felony was sufficient and proper.

We find no merit in defendant's contention that the specific crime of burglary as averred in the indictment resulted in error. There is ample precedential authority for sustaining the correctness of an indictment in an escape case which avers the specific offense for which a defendant is incarcerated rather than generalizing the reason for his incarceration by stating that it was because of the commission of a felony. See *People v. Hill* (1959), 17 Ill. 2d 112, 160 N.E.2d 779, and *People v. Arbuckle* (1966), 69 Ill. App. 2d 251, 215 N.E.2d 825.

We further disagree with the defendant that error was committed when the State introduced evidence of all four of his burglary convictions. In so disagreeing, we do not quarrel with the defendant's assertion that such cumulative evidence could result in impressing the jury unfavorably as to his propensity to commit crimes. There is, however, a practical reason for the admission into evidence of all convictions of the defendant for which he is incarcerated at the time of his escape. The practical reason is that at the time of his trial for felony escape the State was uncertain as to whether the defendant would be able to successfully attack any of the individual convictions in post-trial proceedings. The State should not at its peril be required to select one conviction upon which to base their felony escape action. It is possible that one burglary conviction might be reversed. Should it be the one proved during the felony escape trial, then a conviction for escape based upon such conviction would fall. The law would be thwarted. It is not the intent or purpose of the law to establish and adhere to rules that would thwart the administration of justice.

Lastly the defendant contends that if his conduct constituted an escape he should have been prosecuted under section 3—6—4(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, par. 1003—6—4(a)). This statutory provision provides that a committed person who fails to return from furlough or from work or day release is guilty of a Class 3 felony.

Whether the defendant should have been prosecuted for committing a felony or a misdemeanor is the precise question which this court recently determined in the case of *People v. Cole* (1980), 84 Ill. App. 3d 347. In *Cole* this court determined that a prosecutor is vested with discretion in circumstances such as presented in the instant case as to

whether an accused will be prosecuted for committing a felony or a misdemeanor. Since our decision in *Cole*, a sister appellate court district has filed the case of *People v. Marble* (1st Dist. 1980), 84 Ill. App. 3d 1. The case of *Marble* reaches a result contrary to that in *Cole*. In fact, the opinion in *Marble* generally adopted the position and reasoning in the dissent filed by Justice Barry in the case of *Cole*.

The cases of *Cole* and *Marble* are irreconcilable both as to reasoning and result; however, we prefer to adhere to the position set forth by this court in *Cole*. We are mindful of the fact that divergent views from different appellate courts of our State regarding an identical issue results in a lack of stabilization and frequently presents problems concerning precedential authority. This felony versus misdemeanor prosecution question presented in *Cole* and *Marble* is a serious one which most likely will recur. It is to be hoped that our legislature will address itself to this problem and clearly spell out its legislative intent.

For the reasons stated herein the conviction of the defendant by the circuit court of Peoria County and the sentence imposed thereon is affirmed.

Affirmed.

STENGEL, J., concurs.


Mr. JUSTICE BARRY, dissenting:

I must respectfully dissent from the decision of the majority in this case for two reasons. First, I believe that section 3—6—4(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, par. 1003—6—4(a)) provides the exclusive sanction for a failure to return from work release, and consequently prosecution under section 31—6(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 31—6(a)) was erroneous. Secondly, even if prosecution for escape under section 31—6(a) was proper here, the State's revelation to the jury during the trial of the exact nature and extent of the defendant's prior felony convictions which constituted an element of the offense was reversible error.

As the majority points out, this case is similar to *People v. Cole* (1980), 84 Ill. App. 3d 347, 405 N.E.2d 347. In *Cole*, a majority of this court held that the convict defendant who had failed to return from furlough could be prosecuted for escape under either the escape statute, violation of which is a Class 2 felony (Ill. Rev. Stat. 1977, ch. 38, par. 31—6(a)), or under section 3—6—4(a) of the Unified Code of Corrections, which provides that a person committed to the Department of Corrections who fails to return from furlough, work release, or day release is guilty of a Class 3 felony (Ill. Rev. Stat. 1977, ch. 38, par.

1003—6—4(a)). I dissented in *Cole* because I believe the language of the relevant statutes, as well as their legislative history, evinces a clear legislative intent that a failure to return from a furlough is to be punishable only under section 3—6—4(a) of the Unified Code of Corrections. For these same reasons, I believe that a failure to return from work release is punishable only under section 3—6—4(a), and prosecution of the defendant under section 31—6(a) was improper.

Prior to January 1, 1973, section 123—7 of the Code of Criminal Procedure of 1963 provided for the establishment of work-release programs by the Department of Corrections (Ill. Rev. Stat. 1971, ch. 38, par. 123—7). Section 123—7 provided that any person committed to the Department of Corrections who escaped from work release "is guilty of the crime of escape and may be prosecuted under any applicable statute." This statute was subsequently repealed by Public Act 77-2097 (effective January 1, 1973), which created the current Unified Code of Corrections. Section 123—7 was replaced by a more comprehensive statute governing work-release procedures (Ill. Rev. Stat. 1973, ch. 38, pars. 1003—13—1 through 1003—13—6). Section 3—13—4 covers rules and sanctions, and provides in pertinent part:

"(a) The Department shall establish rules governing release status and shall provide written copies of such rules to both the committed person on work or day release and to the employer or other person responsible for the individual. Such employer or other responsible person shall agree to abide by such rules, notify the Department of any violation thereof by the individual on release status, and notify the Department of the discharge of the person from work or other programs.

(b) If a committed person violates any rule, the Department may impose sanctions appropriate to the violation. *The Department shall provide sanctions for unauthorized absences which shall include prosecution for escape under Section 3—6—4.*" (Emphasis added.) (Ill. Rev. Stat. 1977, ch. 38, par. 1003—13—4(a), (b).)

Section 3—6—4(a) provides:

"(a) A committed person who escapes or attempts to escape from an institution or facility of the Adult Division, or escapes or attempts to escape while in the custody of an employee of the Adult Division, or holds or participates in the holding of any person as a hostage by force, threat or violence, while participating in any disturbance, demonstration or riot, causes, directs or participates in the destruction of any property is guilty of a Class 2 felony. *A committed person who fails to return from furlough or from work and day release is guilty of a Class 3 felony.*" (Emphasis added.) Ill. Rev. Stat. 1977, ch. 38, par. 1003—6—4(a).

I believe that on the basis of these statutes and their legislative history the legislature has made it patently clear that a person committed to the Department of Corrections who fails to return from work release is not to be tried for the crime of escape under section 31—6(a), but is rather to be prosecuted under section 3—6—4(a) in accordance with the directives of section 3—13—4(b) if the Department of Corrections deems criminal prosecution to be the appropriate remedy. The previous work-release statute, section 123—7, allowed for prosecution for unauthorized absences from work-release centers "under any applicable statute." This broad language obviously included prosecution for escapes under section 31—6(a). In my opinion, by repealing section 123—7 and replacing its sanction provisions with section 13—3—4(b) of the Unified Code of Corrections, the General Assembly has eliminated criminal prosecution as the sole sanction for failure to return from work release and in its place provided for the imposition of such disciplinary sanctions as the department shall deem necessary. If, however, criminal prosecution is appropriate, prosecution shall be pursuant to section 3—6—4(a). Prosecution for escape under section 31—6(a) is limited to all escapes other than a failure to return from an authorized absence in the form of furlough, work release, or day release.

Also, as I stated in my dissent in *Cole*, there is another important line of reasoning which supports my position that prosecution for unauthorized absences from furlough, work or day release under section 31—6(a) is improper:

> " 'It is a rule of statutory construction that the expression of one thing is the exclusion of others, and it is also axiomatic that the specific shall prevail over the general.' (*People v. Caryl* (1977), 54 Ill. App. 3d 537, 538-39, 369 N.E.2d 926, 927; *People v. Whitney* (1977), 46 Ill. App. 3d 708, 361 N.E.2d 131.) It was error for the State to prosecute under section 31—6(a), the more general escape statute, when a more specific statute proscribing the conduct and affording appropriate sanctions was available. In *People v. Hale* (1965), 55 Ill. App. 2d 260, 204 N.E.2d 833, the defendant escaped from the Illinois State Farm at Vandalia. He was subsequently prosecuted for escape under section 5 of 'An Act in relation to the Illinois State Farm' (Ill. Rev. Stat. 1971, ch. 118, par. 18) and convicted. On appeal, he contended that the trial court erred in sentencing him under the Illinois State Farm Act, rather than under the provisions of the escape statute (section 31—6(b)). The court, in finding no error, stated:
>
> > 'Paragraph 18 of Chapter 118 is a particular enactment that applies only to escapes from the Illinois State Farm, whereas paragraph 31—6(b) of the Criminal Code of 1961 is a

general statute applying to the escape of all misde-meanants. A particular enactment found in the statute is operative as against general laws relating thereto.' (55 Ill. App. 2d 260, 263, 204 N.E.2d 833, 835.)

Under the court's reasoning, had prosecution been pursuant to section 31—6(b) error would have occurred. That is exactly the situation in the case at bar. The escape provisions of the Illinois State Farm Act (repealed by Public Act 77-2097) are now found in section 3—6—4 of the Unified Code of Corrections. Just as its predecessor was in *Hale*, section 3—6—4 is a particular enactment and operative as against all general laws (*i.e.*, section 31—6) relating to the same subject matter. As such, section 3—6—4 preempts criminal prosecution under section 31—6." *People v. Cole* (1980), 84 Ill. App. 3d 347, 353, 405 N.E.2d 347, 351 (Barry, J., dissenting).

Assuming *arguendo* that the defendants' prosecution under section 31—6(a) was proper, I believe that a reversal and a remandment for a new trial is nonetheless mandated because the trial court erred in allowing the State to introduce evidence of four burglary convictions at trial. In rejecting the defendant's contention that the revelation to the jury of the underlying felonies of which he was convicted was error, the majority overlooks this court's recent decision in *People v. Slaughter* (1980), 84 Ill. App. 3d 88, 404 N.E.2d 1058. In *Slaughter*, the defendant was convicted of escape under section 3—6—4(a). During both the opening statement and closing argument, the prosecutor made reference to the fact that at the time of his escape from Stateville Penitentiary the defendant was serving a term of 100 to 300 years for murder and a related burglary. On appeal, the defendant contended that these remarks, considered in conjunction with a number of other comments made by the prosecutor during his opening statement and closing argument, were highly prejudicial and constituted reversible error. This court agreed. "Although any one of the prosecutor's remarks alone may not have been sufficient to constitute reversible error, the cumulative effect of those remarks so prejudiced the defendant that we believe he was deprived of a fair trial." (84 Ill. App. 3d 88, 95, 404 N.E.2d 1058, 1064). More particularly, with regard to the prosecutor's references to the nature of the underlying felonies, we found that although the fact of the defendant's conviction was necessary to prove under section 3—6—4(a) that the defendant was in the custody of the Department of Corrections at the time of his escape, the revelation of the *nature* of the convictions was unnecessary. Noting that some State and Federal courts have adopted the practice in escape cases of introducing into evidence a certified copy of the prior judgment of conviction with the language revealing the nature of that conviction

excised (*United States v. Spletzer* (5th cir. 1976), 535 F.2d 950; *Fouts v. State* (Fla. App. 1979), 374 So. 2d 22), we stated:

> "[S]uch a procedure would allow the State to establish prior conviction and incarceration, some of the necessary elements of escape, while also preventing the jury from hearing the potentially prejudicial facts as to the nature of the earlier offense and the sentence imposed. In the instant case, no proper purpose was served by informing the jury of the defendant's prior murder conviction or of his 100 to 300 year sentence. The only effect of allowing the particulars of the prior offense into evidence was that of prejudicing the defendant in the jury's eyes. While one appellate opinion has asserted that it is best to allow the trial court discretion in deciding what portions of the record of the prior conviction will be admitted (*People v. Arbuckle* (1966), 69 Ill. App. 2d 251, 215 N.E.2d 825), the better practice, we believe, is that referred to and outlined in *United States v. Spletzer* and *Fouts v. State*. Such procedure in no way hampers the State in its proof of the escape charge and it avoids the serious potential for prejudice inherent in allowing the jury to be informed of the nature of the prior offense and the punishment." (84 Ill. App. 3d 88, 95-96, 404 N.E.2d 1058, 1064.)

In *Fouts*, the court concluded that it was reversible error to allow the prosecution to introduce into evidence the nature of the prior crime. Consistent with *Fouts* and in accordance with the views expressed by this court in *Slaughter*, I would reverse and remand for a new trial.

Although I dissent, I agree with the majority that the divergent views expressed by this district both in *Cole* and in the case at bar and by the first district in *People v. Marble* (1980), 84 Ill. App. 3d 1, 400 N.E.2d 923 (accord, *People v. Hendrix* (1980), 85 Ill. App. 3d 1040, 407 N.E.2d 847) regarding the propriety of prosecution for escape from an authorized absence under section 31—6(a) of the Criminal Code of 1961 create a number of problems for both State's Attorneys and trial court judges, primarily. Although I firmly believe that the legislature has already manifested its intent that escapees from furlough, work release or day release are to be punished pursuant to the directives of section 3—13—4(b) of the Unified Code of Corrections exclusively, I, too, would welcome any clarification by either the General Assembly or the supreme court which would alleviate the differences between this district and the first district appellate court on this issue.[1]

---

[1] Such a step toward clarification had been taken by the Senate in the form of Senate Bill 804 (introduced April 10, 1979), which would have amended section 31—6 to include failure to return from an authorized absence while sentenced to periodic imprisonment or work release (*People v. Hendrix* (1980), 85 Ill. App. 3d 1040, 1042 n.2, 407 N.E.2d 847, 848 n.2). Unfortunately, the bill was not acted upon in the Senate Judiciary II Committee during that legislative session.