THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
LARRY H. SMITH, Defendant-Appellant.

Third District   No. 79-999

Opinion filed July 22, 1980.

Robert Agostinelli and G. Joseph Weller, both of State Appellate Defender's Office, of Ottawa, for appellant.

L. Patrick Power, State's Attorney, of Kankakee (John X. Breslin, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

Larry Smith, the defendant, was convicted by a jury of attempt murder and two counts of aggravated battery, arising from an attack on his ex-wife.

The Smiths were divorced on November 30, 1978, after 15 years of marriage. The victim, Sharon Smith, testified that, on July 12, 1979, she returned home from an after-work shopping errand to find the defendant in her garage. At his request, she drove him to his house. The defendant asked her to come in for coffee, but she refused. He then pulled out a cigarette lighter shaped like a gun and told Mrs. Smith that he would kill her if she did not come into the house. She replied that she would come in and talk with him if he would give her the simulated gun. He handed it to her and she locked it in the trunk of her car. When they entered his house, he closed all the windows and doors and ordered her to undress. When she refused, he threatened her with death unless she complied, and pulled

at her shirt. She started to cry and he then pulled two knives from his socks. These knives belonged to Mrs. Smith and had been kept by her in a closed cabinet. He again ordered her to undress and threatened her with death. She said she would do as he said if he would lay down the knives. He set them down on a table. They then engaged in sexual intercourse. Afterward, while Mrs. Smith started to dress, the defendant stabbed her in the back. He then called for an ambulance and police car and telephoned her mother.

When the police arrived at the scene, the defendant had a knife in his stomach, having also stabbed himself. Mrs. Smith was slumped against the couch with the knife still in her back. According to the medical testimony, the knife in Mrs. Smith's back was within a centimeter of her heart. The defendant had a deep stab wound which cut his stomach and other abdominal organs.

The defendant did not deny that he stabbed his ex-wife. He testified that prior to the incident, he had been drinking and taking medication and had wrecked his car. Before Mrs. Smith arrived home, he cut up some of her negligees. He also consumed more alcohol at her house. He testified that he could not remember the stabbing itself, although he could recall some of the preceding events. He stated that he had been admitted to the hospital for psychiatric treatment a number of times during the preceding three years.

The defendant asserted an insanity defense, and important testimony was given by two psychiatrists, Dr. Gabriel Misevic and Dr. Dusan Gojkovich. Dr. Misevic testified that, in his view, Smith had no mental disease which would prevent him from a knowledge of the criminality of his act. Dr. Gojkovich testified that, in his opinion, Larry Smith lacked the substantial capacity to appreciate the criminality of his conduct or to conform that conduct to the requirements of the law. Dr. Gojkovich also testified that Smith was suffering from "temporal lobe" or "psychomotor" epilepsy, a condition which produces spells of "automatic behavior."

Both of these psychiatrists were appointed by the court, as Smith was indigent. Dr. Misevic was appointed first, on September 21, 1979. He submitted a report, on October 9, expressing an opinion that Smith was both legally sane and fit for trial. On the basis of this report, the court ruled that Smith was competent to stand trial. Pursuant to defense counsel's motion, Dr. Gojkovich was appointed, on October 15, to make a further examination as to Smith's sanity at the time of the attack upon Mrs. Smith.

Six days after his appointment, on October 22, 1979, Dr. Gojkovich sent a letter to defense counsel stating, "After examining the patient, it is my opinion that he is fit to stand trial. On the other hand, there is a good possibility that an insanity defense could be utilized." The letter added, "I

have knowledge of his psychopathology from his prior hospitalization at Riverside Medical Center, even though I wasn't his treating physician. I would like to review his records." These records were at Riverside Medical Center, where Dr. Gojkovich was chairman of the department of psychiatry. The judge was very displeased with Dr. Gojkovich's performance, noting that his letter was not a report at all, and that Dr. Gojkovich usually did better work for the court. On October 22, the case was reset, on the defendant's motion, for trial on the next calendar. On November 5, 1979, defense counsel answered ready for trial. The court ordered the case set for jury selection the following morning. On Tuesday, November 6, 1979, defense counsel moved for a continuance until the following Monday (November 12), so that Dr. Gojkovich could review the defendant's records from Riverside Medical Center. The judge denied this motion, pointing out that the defense had received Dr. Gojkovich's letter two weeks prior, on October 23. On November 5, defense counsel had subpoenaed the records, and received them the next day. Dr. Gojkovich testified on Tuesday, November 13, one day after the date to which the defendant asked the case be continued. It is clear that he had reviewed the defendant's hospital records prior to testifying, although the defendant correctly points out that Dr. Gojkovich found some passages of these records to be illegible and said so under cross-examination.

The defendant argues that the court erred in denying his motion for a continuance, and that he was thereby deprived of a fair trial on the only contested issue, his sanity. He makes much of the judge's displeasure with Dr. Gojkovich's October 22 "report." The rest of this letter, quoted in part above, reads:

> "As I recall, there was evidence of seizure disorder in the past and paranoid predisposition. The patient admits to the use of prescription drugs and alcohol in high dosages. This, coupled with his natural predisposition, is enough to provoke a paradoxical reaction to alcohol with loss of control under emotionally charged circumstances."

This report was mentioned briefly on cross-examination. The prosecutor asked where the report contained any reference to temporal lobe epilepsy, implying that he could find no such words in it. Dr. Gojkovich replied that "seizure disorder" is the same thing. The prosecution also inquired into Dr. Gojkovich's basis in knowledge for the report. Dr. Gojkovich answered that the report was based upon his prior contact with the defendant as a psychiatric patient, his review of the records, commencing July 14, and an interview with the defendant on the same date. "Whenever I wrote [the October 22] report I had already, already sifted through some material and I formed some opinion about Mr.

Smith's condition but I just wanted to double check or verify, get additional information which never hurts." Generally, the report was consistent with Dr. Gojkovich's testimony. In fact, prior to trial, the prosecution thought the report prejudicial to its case, due to the report's brevity, which, the prosecution claimed, deprived it of information to which it was entitled on discovery.

It was clear from Dr. Gojkovich's trial testimony that he was thoroughly familiar with the defendant's medical records. He referred to these records many times while testifying. He stated that there were 20 sections relevant to the formation of his opinion, and referred to six of these at trial, ranging from pages 49 to 550. He first "reviewed the medical records on July 14." He testified that he had looked at some records before October 22 and had gone through them in some detail during the "last ten days." He stated that he had reviewed all 600 pages of the records for ten hours during the few days prior to his trial testimony, although he only mentions six hours at this task in his bill for compensation. As noted, the date upon which Dr. Gojkovich testified was one day after the date to which the defendant requested the case be continued.

■■ "A motion for a continuance is addressed to the sound judicial discretion of the trial court and the court's ruling will not be disturbed on review unless it is shown that the discretion has been abused. (*People v. Clark*, 9 Ill. 2d 46.) Before it can be said that such motion has been improperly denied, it must appear that the refusal to grand additional time has in some manner embarrassed the accused in his defense and thereby prejudiced his rights. [Citations.]" (*People v. Wilson* (1963), 29 Ill. 2d 82, 92, 193 N.E.2d 449.) It is clear that, in the instant case, the defendant was not prejudiced at trial by the court's denial of the requested continuance.

The defendant was convicted of three counts: one count of attempt (murder) (Ill. Rev. Stat. 1979, ch. 38, pars. 8—4(a) and 9—1(a)(1); one count of aggravated battery (Ill. Rev. Stat. 1979, ch. 38, par. 12—4(a), battery causing "great bodily harm"); and a second count of aggravated battery (Ill. Rev. Stat. 1979, ch. 38, par. 12—4(b)(1)), battery employing the use of a deadly weapon). The defendant was sentenced to a determinate sentence of 20 years in the Department of Corrections, plus three years' supervised release. He was 36 years old at the date of sentencing, January 3, 1980. The order of sentence of imprisonment recites that the defendant had been indicted and convicted for the three counts mentioned herein. He was ordered to pay fees for three felony convictions. Therefore, it is clear that none of the three convictions had been vacated by the court prior to sentencing.

■■ Because the only criminal act for which the defendant was charged

was the stabbing of his ex-wife on July 14, 1979, he can only be convicted of one crime arising from this act. (See, *e.g., People v. Ford* (1980), 83 Ill. App. 3d 57, 403 N.E.2d 512.) The defendant argues this point, and the State agrees that the one-act, one-crime rule applies to this case. The State asks only that we affirm the conviction for the greater crime, attempt murder. While the sentencing judge, in his address from the bench, gave no indication that he was sentencing the defendant for more than one crime, he erred in failing to vacate the two convictions for aggravated battery. We, therefore, order that the two convictions for aggravated battery be vacated. Because we cannot know to what extent the trial court may have considered the convictions vacated here in arriving at its sentencing decision, we remand this cause for resentencing solely on the conviction for attempt murder. The record clearly supports such conviction.

Judgment of conviction for attempt (murder) affirmed.
Judgments of conviction for aggravated battery vacated.
Cause remanded for resentencing for attempt murder only.

STOUDER and SCOTT, JJ., concur.