THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
WALTER E. DAVIS, Defendant-Appellant.

Third District    No. 80-67

Opinion filed April 8, 1981.—Rehearing denied May 8, 1981.

Robert Agostinelli and Charles W. Hoffman, both of State Appellate Defender's Office, of Ottawa, for appellant.

Bruce Black, State's Attorney, of Pekin (John X. Breslin and Rita F. Kennedy, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE BARRY delivered the opinion of the court:

The defendant, Walter Davis, was charged by indictment with two counts of deviate sexual assault (Ill. Rev. Stat. 1979, ch. 38, par. 11—3(a)) and one count of indecent liberties with a child (Ill. Rev. Stat. 1979, ch. 38, par. 11—4(a)(3)). Following a trial by jury in the circuit court of Tazewell County, the defendant was convicted on all three counts. He was subsequently sentenced to the Department of Corrections to serve concurrent eight-year terms on each of the deviate sexual assault counts, and a four-year term on the indecent liberties count. The four-year term was also to be served concurrently. It is from his convictions as well as the sentences imposed that the defendant appeals.

The resolution of the various issues raised by the defendant on appeal necessitates a somewhat detailed recitation of the facts of this case. Michelle Allen, whose sexual molestation formed the basis of the defendant's indecent liberties conviction, was the first witness to testify for the State. Her testimony was substantially as follows.

On the evening of September 15, 1979, Michelle (age 12), her twin sister Tammy, and Chuck Helfers (age 16) went to the house of Joe Davis in Pekin, Illinois, where Helfers was to babysit for Davis' two children. When they arrived at the Davis home at approximately 9:30, no one was home. Subsequently, Joe Davis, his ex-wife Nancy, and the defendant arrived. Nancy is the older sister of Chuck Helfers. The defendant and Joe Davis are brothers. They were followed shortly by a man named Rick and his wife, Lynn.

During the evening, about midnight, the defendant, Helfers, and the Allen sisters left the Davis house for a pizza. When they returned, Joe Davis and his former wife had retired for the night and were sleeping in one of the two bedrooms located on the main floor of the house. The Davis' two children were sleeping in the second bedroom. Rick was sleeping in the attic on a mattress provided by Nancy Davis.

After eating the pizza, everyone still awake decided to go to bed. Lynn went upstairs to sleep with her husband. Michelle, with the defendant's help, placed a mattress on the dining room floor on which she, Tammy, and Helfers would sleep. This mattress was located directly behind a sofa which faced the living room. The defendant decided to sleep on the floor in the space between the mattress and the back of the

sofa. Because the mattress was too small for three people, Michelle eventually decided to sleep on the couch. The time was approximately 1:30 a.m.

During the night, Michelle was awakened by someone lying next to her on the couch trying to pull her pants down. Although she could not see her assailant's face, she noticed that he was wearing blue jeans and a plaid long-sleeved wool shirt. Her assailant was unable to pull her pants completely off. However, he did manage to place his hand inside her pants and underwear and insert a finger into her anus. At this time Michelle took the assailant's hands out of her pants, told him to get off the couch, and as he did, kicked him. Immediately, the assailant got off the couch, and lay on the floor.

About five minutes later, she heard the same person who had assaulted her get off the floor, and open the door of a refrigerator that was located in the dining room. She sat up, and although she could not see his face in the light of the refrigerator, she did see the back of his head and recognized him as the defendant. The shirt and pants the defendant was wearing were the same as those worn by her attacker. She also noticed from a clock located on top of the refrigerator that the time was 3 a.m.

Michelle testified that some time later she heard some rubbing noises similar to the noise made by rubbing a hand across carpeting coming from behind the couch. These rubbing noises lasted only a short time. An hour or so later, she fell asleep, and awoke at approximately 8 a.m. When she awoke, the defendant was gone. She did not mention the incident to anyone until she told her sister about it later that day.

Chuck Helfers was the next prosecution witness. His testimony regarding the events of September 15, 1979, varied from Michelle's in a number of aspects. He stated that Joe and Nancy Davis had three children, not two (as Michelle testified), and also stated that the defendant slept not between the mattress and couch, but on the floor near the television set (which was placed near the front door). He further testified that throughout the evening the defendant was wearing blue jeans and a white T-shirt. In addition, according to Helfers, several of the people at the Davis house the night of September 15 smoked marijuana, although neither he nor the Allen sisters did.

The majority of Helfers' testimony related to the deviate sexual assault upon him. At approximately 3:30 a.m. Helfers felt someone rubbing his back. This person then rolled Helfers over, pulled down his pants and underwear, and fondled Helfers' penis. After several minutes, Helfers was turned over onto his stomach, and the assailant placed his penis in Helfers' anus. Although Helfers did not see his assailant's face, out of the corner of his eye he caught a glimpse of the person's hair and recognized it as belonging to the defendant. According to Helfers, the

defendant subsequently ejaculated on his (Helfers') underwear, but there was no physical evidence to corroborate this testimony. After ejaculating, the defendant rolled Helfers over onto his back again and placed Helfers' penis in his mouth. During this entire 15-minute attack, Helfers did not cry out, scream or physically resist the defendant by pushing him off or striking him. Helfers testified that he did try to roll away from the defendant several times but admitted that his movements facilitated the removal of his pants and underwear. He stated that during the assault he pretended to be asleep and was afraid to do anything else at that time. Tammy Allen, who was on the mattress several inches away, did not awaken during the attack.

About 20 minutes after the assault, Helfers got up, checked the Davis children, and bathed. When he came out of the bathroom, the defendant was lying on the floor in front of the television set. Helfers sat in a chair until the defendant left the house at approximately 6 a.m. He did not tell anyone, including his parents, about the attack until that evening of September 16.

The final witness for the prosecution was Joseph Davis, the defendant's brother. He testified that the evening of September 16 he received telephone calls from both the mother of the Allen twins and Chuck Helfers' father informing him of the incidents that allegedly took place the previous night. The next morning Joe Davis confronted the defendant with these allegations. According to Joe Davis, the defendant was initially incredulous, but then began to cry and stated that he did not remember anything except touching the clothing of one of the twins. Subsequently, the defendant was notified that the police were looking for him, and turned himself in.

During the course of cross-examination, Joe Davis described his brother as being 28 years of age, approximately 5'8" in height, and weighing between 150-170 pounds.

Four witnesses were called to testify on behalf on the defendant: Helfers, Michelle and Tammy Allen, and the defendant himself. On direct examination, defense counsel was able to elicit from Helfers an admission that it would have appeared to the person who was performing the deviate sexual acts upon him that he was cooperating in those acts. Neither Michelle nor Tammy Allen was questioned at length. Contrary to Helfers' testimony during the State's case in chief, Michelle testified that she, Lynn, Tammy and Helfers smoked marijuana the evening of September 15. Tammy Allen testified that she slept on the mattress from 12:30 or 1 a.m. until it was light the next morning. She was not awakened at any time during the night, and felt no one pushing or kicking her. She further testified that the night of September 15 the defendant was wearing blue jeans and a red or orange T-shirt. Finally, the defendant

testified and admitted drinking and smoking marijuana the night of September 15, 1979. According to the defendant, Lynn, Michelle, Tammy and Helfers also smoked marijuana. After helping get the mattress on which Tammy and Helfers slept out onto the dining room floor, he fell asleep in front of the television set located in the living room by the front door. The next thing he remembered was waking up at approximately 6:30-7 a.m. He described his attire the night of the alleged offenses as blue jeans and a faded navy blue T-shirt. He did state, however, that during the evening his brother had given him a long sleeved shirt to wear, which he wore for a time that night. Regarding the Monday morning conversation with his brother, he denied ever having said he touched the clothing of either one of the twins, and professed innocence of all offenses of which he was accused.

On appeal from his convictions, the defendant first contends that the State failed to prove him guilty of the offenses of deviate sexual assault and indecent liberties with a child beyond a reasonable doubt, considering (1) the lack of corroboration of the victims' testimony; (2) the implausible nature of the victims' testimony; (3) the contradictions evident in the testimony of both Michelle Allen and Helfers; and (4) the circumstantial nature of the State's case. We will deal with each of these contentions in turn.

■■■ It is well settled that in cases involving deviate sexual assault and indecent liberties with a child, a conviction based upon the testimony of the victim alone cannot stand unless that testimony is clear and convincing or corroborated by other facts or circumstances in evidence (*People v. Kolden* (1962), 25 Ill. 2d 327, 185 N.E.2d 170; *People v. O'Connor* (1952), 412 Ill. 304, 106 N.E.2d 176). We have thoroughly reviewed the record, and conclude that contrary to defendant's contention, Michelle Allen's testimony was not totally uncorroborated. Joe Davis testified that during the Monday morning confrontation the defendant tearfully admitted having touched the clothing of one of the girls. Although this admission was subsequently denied by the defendant, it nonetheless constitutes sufficient corroboration of her testimony, particularly in light of the context in which the alleged admission was made. Even if this admission had not been in evidence and Michelle's testimony had been essentially uncorroborated, her testimony was sufficiently clear and convincing to support the jury's verdict. Her identification of the defendant as her assailant was positive. (*People v. Richard* (1980), 88 Ill. App. 3d 247, 410 N.E.2d 459; *People v. Robinson* (1980), 87 Ill. App. 3d 621, 410 N.E.2d 331.) She testified that her assailant lay on the floor after she kicked him, then got up and went to the refrigerator in the dining room. Although she could not see his face, she could see the back of his head in the light of the refrigerator and recognized him to be the defendant. The defendant's

clothing and that worn by her assailant were identical. Further, she did not waver in relating the events of the night of September 15 and the early morning hours of September 16, 1979, to the court.

Like Michelle Allen's testimony, the testimony of Chuck Helfers concerning the deviate sexual assault was not totally uncorroborated. Her testimony that she heard rubbing sounds emanating from behind the couch corroborates to some degree Helfers' testimony that he was sexually attacked. Even if we were to discount this evidence as having minimal or no probative value, Helfers' testimony remains so clear and convincing that no reasonable doubt of defendant's guilt arises. Helfers' identification of the defendant as his attacker was positive and certain. Like Michelle, he did not actually see his assailant's face. However, he did see his hair, and stated unequivocally that it belonged to the defendant. His testimony was consistent and not shaken in the face of vigorous cross-examination by defense counsel. In light of the foregoing, we reject defendant's argument that either the victims' testimony was uncorroborated or was not clear and convincing so as to raise a reasonable doubt of defendant's guilt.

The defendant next urges this court to reverse on grounds that the victims' testimony was inherently implausible and so riddled with contradictions that there exists a reasonable doubt of guilt. Regarding the contradictions between the testimony of Michelle Allen and Helfers, we are cognizant that discrepancies exist in the descriptions given of the defendant's clothing, the place where he slept, the identities of those who smoked marijuana on the night in question, and the times at which certain events took place. The effect of these inconsistencies, however, which is one of credibility and weight, is primarily for the jury to decide. (*People v. Hobson* (1979), 77 Ill. App. 3d 22, 396 N.E.2d 53.) As the supreme court stated in *People v. Novotny* (1968), 41 Ill. 2d 401, 412, 244 N.E.2d 182, 188, "It is neither the duty nor the privilege of a reviewing court to substitute its judgment as to the weight of disputed evidence or the credibility of witnesses for that of the trier of fact who heard the evidence presented and observed the demeanor of the witnesses * * *." (Accord, *Hobson; People v. Ellis* (1978), 74 Ill. 2d 489, 384 N.E.2d 331.) Here, the jury heard all of the evidence and was aware of the contradictions present in the testimony of the respective victims. Despite the discrepancies, the jury found the victims to be credible witnesses, and accepted as true their version of the events which transpired on the night in question. In light of the great deference we as a reviewing court are to give jury verdicts, we do not believe the variances in the testimony of the victims warrant reversal.

Similarly, whatever our personal reservations concerning the plausibility of the victims' testimony, particularly that of Chuck Helfers, it is

clear that the jury believed him. Its finding of guilt is not to be disturbed unless it is palpably contrary to the evidence presented at trial, or unless the evidence is so unreasonable, improbable, or unsatisfactory that there exists a reasonable doubt of guilt. (*Hobson; Ellis.*) Such is not the case here. Although it is true that neither Michelle nor Helfers cried out for help or otherwise sought assistance in warding off their assailants, such a fact alone does not make their testimony inherently unbelievable. Michelle testified that during the lewd fondling she was afraid, and "didn't know what to do." Considering that she is a 12-year-old girl, this reaction is understandable and not unreasonable. Helfers testified that during the attack upon him he was afraid to do anything, except pretend to be asleep and attempt (albeit futilely) to avoid his attacker, a man 12 years his elder, by rolling away. This testimony is not inherently unworthy of belief. Further, we do not deem it highly improbable that Tammy Allen, a 12-year-old who had apparently smoked marijuana and had gone to bed a few short hours before and who was sleeping on the mattress next to Helfers the night of the attack, did not awaken during the course of the 15-minute assault.

■■ Next, the defendant asserts that the evidence of his guilt of these offenses, which was entirely circumstantial, was insufficient to prove him guilty beyond a reasonable doubt. The defendant centers his claim upon the alleged weakness in the identification testimony of both victims. "The weight to be given testimony regarding identification is a question for the trier of fact. [Citation.] That determination will not be upset unless it is so contrary to the evidence that it cannot be justified." (*People v. Smith* (1977), 52 Ill. App. 3d 53, 58, 367 N.E.2d 84, 88.) Under this standard of review, and in light of the fact that we consider the identification of the defendant by Michelle Allen and Helfers to be positive and unequivocal, the jury's determination that both victims correctly identified the defendant as the attacker is not erroneous, and will not be disturbed.

■■ The next contention by the defendant on appeal is that the State failed to prove him guilty of the deviate sexual assaults upon Helfers because the record is devoid of any evidence that the acts were committed forcibly or by the threat of force. Section 11—3(a) of the Criminal Code provides that "Any person of the age of 14 years and upwards who, by force or threat of force, compels any other person to perform or submit to any act of deviate sexual conduct commits deviate sexual assault." (Ill. Rev. Stat. 1979, ch. 38, par. 11—3(a).) The court in the instant case instructed the jury on the definition of force as an element of the offense of deviate sexual assault by giving the State's instruction No. 12, a modified version of IPI Criminal No. 9.02: "When I use the words 'by force or threat of force, compels another person to perform or submit,' I mean that under the circumstances the other person did not voluntarily

consent to the acts of deviate sexual conduct." Clearly, Helfers did not voluntarily consent to the sexual assaults. Helfers made a number of futile attempts to roll away from the defendant, and was in fact successful in resisting the defendant's attempt to place his penis in Helfer's mouth. Although it is true that Helfers did not try to push the defendant off of him or cry out for help, the reason he did not do so was because he was afraid. As he stated on direct examination in response to the inquiry as to why he did not cry out or more actively try to resist the defendant, "I was scared. I didn't know if he'd do anything to me or not." Regarding Helfers' admission that it would have appeared to the one performing these acts upon him that he was cooperating, we agree that this statement is probative on the issue of consent. It is not, however, conclusive. Reading Helfers' testimony in its entirety, it is obvious that he did not voluntarily consent to the assaults. Consequently, the defendant's contention that no evidence of force was present is without merit, because by definition lack of force is only evident when there is voluntary consent by the victim. IPI Criminal No. 9.02.

■■ As his third issue, the defendant contends that the entry of two deviate sexual assault convictions violates the restriction against the entry of multiple convictions arising out of the same physical acts, and therefore one of the deviate sexual assault convictions must be vacated. In *People v. Schultz* (1979), 73 Ill. App. 3d 379, 392 N.E.2d 322, this court stated the following with regard to the entry of multiple convictions under *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838:

> "If, after an examination of several factors—time interval between acts; identity of the victim; location of the acts; *and* whether or not those acts fall within the same section of the Criminal Code—it is obvious that the defendant has committed several acts which give rise to more than one offense, none of which are lesser included offenses, then multiple convictions are proper under *King*." (73 Ill. App. 3d 379, 385, 392 N.E.2d 322, 327.)

In the instant case, the defendant was charged and convicted of two counts of deviate sexual assault, one count based upon the placing of his mouth on Helfers' penis, the other based upon the placing of his penis in Helfers' anus. The identity of the victim and the location are identical. Both acts are proscribed in the same section of the Criminal Code. (Ill. Rev. Stat. 1979, ch. 38, par. 11—3(a).) Further, the acts were almost simultaneous in time. (*People v. Cox* (1972), 53 Ill. 2d 101, 291 N.E.2d 1.) Based upon these facts, we believe that the one act/one crime doctrine mandates vacation of one of the deviate sexual assault convictions. Accordingly we vacate one of these convictions, and remand this cause for a new sentencing hearing because we do not know on the basis of the record before us what effect, if any, the vacated deviate sexual assault

conviction had upon the trial court's sentencing determination. *People v. Smith* (1980), 86 Ill. App. 3d 302, 408 N.E.2d 101.

Our disposition of this cause obviates any discussion of the other issues raised on appeal by the defendant, one of which was whether the trial court adequately specified at the sentencing hearing its reasons for sentencing the defendant to two concurrent eight-year terms for deviate sexual assault. We do urge, however, the trial court in resentencing the defendant to be more detailed in specifying for the record its reasons for making its particular sentencing determination. Ill. Rev. Stat. 1979, ch. 38, par. 1005—4—1(c); *People v. Sherman* (1980), 87 Ill. App. 3d 937, 409 N.E.2d 486.

For the foregoing reasons, we affirm the defendant's conviction of indecent liberties with a child and one count of deviate sexual assault, but vacate the remaining deviate sexual assault conviction, and remand the cause for resentencing.

Judgment affirmed in part, vacated in part, and remanded.

SCOTT and STOUDER, JJ., concur.