THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CHARLES MITCHELL, Defendant-Appellant.

Third District    No. 80-388

Opinion filed July 16, 1981.—Rehearing denied August 28, 1981.

Robert Agostinelli and Michael Filipovic, both of State Appellate Defender's Office, of Ottawa, for appellant.

C. David Vogel, State's Attorney, of Pontiac (John X. Breslin and Terry Mertel, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE STOUDER delivered the opinion of the court:

Defendant Charles Mitchell was indicted for attempt (murder), three counts of aggravated battery, five counts of armed violence, and attempt (escape). After his motion to discharge jury panel and for change of place of trial was granted and his motion to suppress evidence was first granted and then denied, this cause proceeded to a jury trial in the circuit court of Grundy County. Defendant was found guilty of attempt (murder), two counts of aggravated battery, four counts of armed violence, and attempt (escape); and judgments of conviction, with concurrent sentences of 45 years in the Department of Corrections, were imposed for the offenses of attempt (murder) and armed violence.

The incident from which this prosecution arose was the stabbing of Officer John E. Rich of the Pontiac Correctional Center (hereinafter the Center). On January 21, 1980, he and Officer George Smith were assigned to transport two inmates, defendant and Michael Hayden, from the Center to the Livingston County Courthouse for a court appearance. Officer Rich drove and Officer Smith rode on the front passenger seat, while the inmates sat in the rear, with defendant on the left. When they arrived and diagonally parked in front of the courthouse, both officers got out of the car. Officer Smith opened the right rear door and proceeded to unshackle Hayden's legs. Officer Rich opened the left rear door, but defendant had begun sliding over to the right door, so he closed and locked it. He then proceeded around the rear of the car. Officer Smith had instructed Hayden to step out of the car and on to the curb and proceeded to unshackle one of defendant's legs.

As Officer Rich rounded the rear of the car, Hayden jumped Officer Smith from behind and struck him in the back. When Officer Smith stood and spun to face him, Hayden lunged for his gun and the officer told his partner to grab defendant. Officer Rich ran to defendant, who struck him lightly in the chin and then repeatedly in the back. Officer Smith subdued Hayden with the help of a pedestrian, John Bohn, and asked another, Keith Meints, to call the police. Officer Rich subdued defendant with the help of a third pedestrian, Gayle Bohm. Center Officer Chester Brees arrived shortly thereafter.

Officer Rich received three stab wounds and was transported to a hospital where he remained for four days, the first 32 hours in intensive care. The officer's wounds, approximately one-half centimeter in length, were on his neck and back and caused his lung to be punctured. Officer Smith was also stabbed.

Neither officer saw any weapon in the hands of either inmate, and both had been searched before leaving the Center. Hayden had been allowed to go to the washroom afterwards, and neither inmate had removed his shoes during the search.

Each of the individuals who assisted the officers testified at trial. John Bohm saw no weapon during the incident but observed a "knife" between defendant's legs near the right rear tire of the car. He picked it up and tossed it to the side of the road. Gayle Bohm saw defendant drop a "black shiny thing" to the ground and later saw it on the ground between his feet. In an earlier written statement, she had never mentioned seeing the weapon in defendant's hand. Meints thought he had seen a "shining object" in Hayden's hand but admitted it could have been a handcuff and was impeached by his prior convictions. Brees observed and picked up a weapon that was lying near the curb.

Defendant testified that he had not tried to escape nor intended to hurt nor cause bodily harm to Officer Rich. He stated he had gotten out of

the passenger's side of the car because Officer Rich had told Officer Smith that he did not have the keys for defendant's handcuffs, and that Hayden's attack on Officer Smith was a surprise to him. After Officer Smith yelled at Officer Rich, defendant recalled the latter officer coming around the car and hitting him. He went on to explain they then grabbed one another and were spinning around when Officer Smith and Hayden slammed into them, pushing them up against the car. Specifically denying that he stabbed Officer Rich, defendant's theory was that the wounds were inflicted by Hayden with the discovered weapons which he had obtained during his post-search washroom visit.

Additional facts will be set forth in our discussion of the issues to which they are germane.

■■ As several of the issues and subissues presented by defendant relate exclusively to either his attempt (murder) or armed violence conviction, we first consider whether one of these convictions must be vacated as the result of both arising from the same physical act. The standard to be applied in making this determination was set forth in *People v. King* (1977), 66 Ill. 2d 551, 566, 363 N.E.2d 838, 844-45, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273:

> "Prejudice results to the defendant only in those instances where more than one offense is carved from the same physical act. Prejudice, with regard to multiple acts, exists only when the defendant is convicted of more than one offense, some of which are, by definition, lesser included offenses. Multiple convictions and concurrent sentences should be permitted in all other cases where a defendant had committed several acts, despite the interrelationship of those acts. 'Act', when used in this sense, is intended to mean any overt or outward manifestation which will support a different offense. We hold, therefore, that when more than one offense arises from a series of incidental or closely related acts and the offenses are not, by definition, lesser included offenses, convictions with concurrent sentences can be entered."

Defendant was convicted of attempt (murder) and of armed violence by committing the offense of attempt (escape) while armed with a category I dangerous weapon. Defendant's attempt (murder) conviction arose from the substantial step of stabbing Officer Rich with the intent to kill him. The attempt (escape) upon which defendant's armed violence conviction was based arose from the identical substantial step of stabbing. As both convictions were therefore based on the same physical act, one must be vacated. As we do not find the administration of each wound to be a separate act (but *cf. People v. Mays* (1980), 81 Ill. App. 3d 1090, 401 N.E.2d 1159 (multiple gunshot wounds)), we honor the State's request to vacate defendant's conviction for armed violence.

Turning to the six issues relating to defendant's attempt (murder)

conviction, we first consider his contention that an aggravated battery conviction should be entered in its stead as the evidence was insufficient to establish the specific intent to kill.

■■ ■ The offense of attempt (murder) requires the mental state of specific intent to commit murder. Knowledge that the consequences of an act may result in death or grave bodily injury, or intent to do bodily harm, is not enough. (*People v. Jones* (1979), 81 Ill. 2d 1, 405 N.E.2d 343.) This intent may be shown by surrounding circumstances and be inferred from the character of the assault, the use of a deadly weapon, and other circumstances. (*People v. Koshiol* (1970), 45 Ill. 2d 573, 262 N.E.2d 446.) The determination of the existence of this requisite intent is for the trier of fact, and that determination will not be disturbed unless there exists a reasonable doubt as to an accused's guilt. *People v. Myers* (1980), 83 Ill. App. 3d 1073, 404 N.E.2d 1082; *People v. Thorns* (1978), 62 Ill. App. 3d 1028, 379 N.E.2d 641; *People v. Jones* (1977), 55 Ill. App. 3d 446, 370 N.E.2d 1142.

■■ In the case at bar, the jury determined that defendant stabbed Officer Rich three times during their struggle. Two of the wounds were administered to his back, and one wound was inflicted in his neck, behind the right ear. The weapon which the jury determined was used was a "shank," a knife or dagger-like instrument with a blade of approximately 2½ inches. Even though dressed for January weather, Officer Rich suffered a punctured lung, which Dr. Floyd Weaver said could be life threatening if not treated. Considering these circumstances, we fail to find the requisite reasonable doubt as to defendant's intent.

Defendant next contends the trial court erred in failing to *sua sponte* instruct the jury as to the definition of murder. While conceding that generally no party may raise on appeal the failure to give an instruction unless he shall have tendered it (Ill. Rev. Stat. 1977, ch. 110A, par. 366(b)(2)(i)), defendant argues the waiver rule will not prevent review of substantial defects in jury instructions if the interests of justice require (Ill. Rev. Stat. 1977, ch. 110A, par. 451(c)).

In *People v. Lewis* (1979), 71 Ill. App. 3d 214, 389 N.E.2d 665, the defendant advanced this argument in an attempt to overturn his attempt (murder) conviction. The court neither found that the omission resulted in an unfair trial nor constituted plain error and held that the issue had been waived. As defendant herein does not indicate how he has been prejudiced, we find this issue has been waived.

Defendant's third contention relating to his attempt conviction is that the trial court erred in admitting a certified copy of his previous murder convictions. This evidence was offered to prove an element of the attempt (escape) charge, but will be considered in relation to the attempt (murder) conviction.

Until recently, a prior conviction could only be established by the record or an authenticated copy showing the caption, return of the indictment in open court by the grand jury, the indictment and arraignment of the defendant, paneling of the jury, and the final judgment of the court. (*People v. Lane* (1948), 400 Ill. 170, 79 N.E.2d 65.) In *People v. Slaughter* (1980), 84 Ill. App. 3d 88, 404 N.E.2d 1058, the court suggested that deleting the nature of the conviction and length of sentence would constitute a better practice, and with this we agree. We do not agree, however, that the failure to so delete in the case at bar merits reversal and remandment of this case. The *Slaughter* court specifically stated that the combined effect of the prosecutor's improprieties deprived the defendant therein of a fair trial. There, as here, the prosecutor commented on the prior conviction evidence. The court found that "[t]he remarks of the prosecutor regarding the defendant's earlier conviction would not alone be sufficiently prejudicial as to constitute reversible error." (*People v. Slaughter* (1980), 84 Ill. App. 3d 88, 96, 404 N.E.2d 1058, 1065.) As *Slaughter* would appear limited by its very language, we find no error in the trial court admitting the certified copies herein.

Defendant next contends the trial court erred in admitting his confession as the State did not demonstrate a knowing and intelligent waiver of *Miranda* rights nor that it was offered voluntarily. Only the question of voluntariness will be considered as the confession was only used in rebuttal to impeach defendant's direct testimony. Even if a *Miranda* violation were here involved, defendant's credibility could be appropriately impeached by use of his earlier conflicting statements. *Harris v. New York* (1971), 401 U.S. 222, 28 L. Ed. 1, 91 S. Ct. 643.

Testimony regarding the circumstances under which the confession was obtained was first offered at the suppression hearing. The question of the voluntariness of a confession is for the trial court to determine, depending not upon any one factor, but on the totality of all the relevant circumstances. We have examined all the facts, and we do not find that they support the defendant's contention that the confession was obtained through the use of force, coercion, threats, abuse or promises.

■■ Defendant's fifth contention relating to his attempt conviction is that his constitutional right to a fair trial by a jury chosen from a representative cross-section of the community was denied when this cause was transferred to an almost exclusively Caucasian county. Defendant cites no precedent for his position.

We are guided by *Duren v. Missouri* (1979), 439 U.S. 357, 364, 58 L. Ed. 2d 579, 586-87, 99 S. Ct. 664, 668:

> "In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2)

that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process."

Without considering the first two *Duren* requirements, we note that defendant has neither shown nor even contended that any group has here been systematically excluded in the jury selection process. We therefore find no prima facie violation of the fair cross-section requirement.

■■ Defendant last contends that his sentence is excessive and should be reduced or this cause remanded for resentencing. Regarding the request for reduction, we may not substitute our judgment for that of the trial court and, absent an abuse of discretion, the sentence it imposes will not be altered. (*People v. Lykins* (1979), 77 Ill. 2d 35, 394 N.E.2d 1182, *cert. denied* (1980), 445 U.S. 952, 63 L. Ed. 2d 787, 100 S. Ct. 1602.) The court, in addition to other factors, considered both the nature of the crime and defendant's prior criminality. The attempted murder of a correctional officer is an extremely serious and heinous offense. Defendant had previously been convicted of robbery, attempt (escape), and two counts of murder. Based on these factors, and the need to deter others from committing such an offense, the court stated it would limit the sentence to that requested by the State. Without detailing the various cases cited by the parties, we do not find an abuse of discretion under these circumstances.

Regarding the request for remandment, defendant argues that the trial court may have been influenced by the armed violence conviction when imposing its sentence for the attempt (murder) conviction. As defendant was sentenced separately on each conviction (*People v. Carmickle* (1977), 46 Ill. App. 3d 112, 360 N.E.2d 794, *appeal denied* (1977), 66 Ill. 2d 626) and has not affirmatively demonstrated from the record an indication of this influence (*People v. Love* (1980), 83 Ill. App. 3d 1073, 404 N.E.2d 1082), this request is denied. *Contra, People v. Davis* (1981), 95 Ill. App. 3d 161, 419 N.E.2d 682; *People v. Smith* (1980), 86 Ill. App. 3d 302, 408 N.E.2d 101.

Accordingly, the judgment of conviction of the circuit court of Grundy County of armed violence is vacated, and that of attempt (murder) is affirmed.

Vacated in part; affirmed in part.

BARRY and HEIPLE, JJ., concur.