THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
MAURICE COWAN, Defendant-Appellant.

Third District   No. 3—90—0264

Opinion filed March 8, 1991.

BARRY, J., dissenting.

Thomas A. Karalis, of State Appellate Defender's Office, of Ottawa, for appellant.

Marshall E. Douglas, State's Attorney, of Rock Island (Judith Z. Kelly, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE STOUDER delivered the opinion of the court:

The defendant, Maurice Cowan, was charged by information with criminal sexual assault and battery (Ill. Rev. Stat. 1989, ch. 38, pars. 12—13(a)(1), 12—3(a)(2)). The trial court dismissed the criminal sexual assault count at the close of the State's case. The jury thereafter convicted him of battery, and the court sentenced him to serve six months in the county jail. The defendant appeals, contending that he was not proved guilty beyond a reasonable doubt.

The complainant, Michelle McClendon, testified that she was in Rock Island on October 20, 1989, to visit her ex-boyfriend. While she

stayed at Dottie Morrison's house that night, she was visited by the defendant. He asked her to come outside, eventually explaining that she was to accompany him to meet Adrian Morrison. McClendon described Morrison as a good friend. The defendant brought McClendon to Roland Cherry's apartment. At the apartment, McClendon, Cherry, Morrison, the defendant, Cherry's mother, and LeRoy Richardson participated in a party. At first, McClendon sipped from a glass of wine while the rest of the group drank from a gallon bottle of Wild Irish Rose. Later, however, some cocaine was brought to the party, and Cherry asked McClendon if she wished to share some with him. Thereafter, McClendon free-based half a gram of cocaine with Cherry and the defendant.

McClendon further testified that when it was nearly daytime, Cherry began making advances toward her, telling her she owed him for the cocaine and he expected her to have sex with both him and the defendant. Adrian was passed out at the time, so McClendon turned to Cherry's mother for help, but she was intoxicated and paid no attention to her. Cherry then grabbed McClendon and pulled her into the bedroom. According to McClendon, both Cherry and the defendant pushed her onto the bed. Cherry then removed her shoes and hid them. McClendon pleaded to use the bathroom, which the defendant convinced Cherry to permit. She testified that she intended to escape, but could not fit through the small bathroom window. She therefore came out of the bathroom. Cherry and the defendant then forced her into the bedroom and onto the bed. The defendant held McClendon's legs, while Cherry pulled her pants down and inserted his finger into her vagina. According to McClendon, both men touched her breasts, but the defendant never touched her vagina.

McClendon eventually convinced the two men to let her go by promising to obtain some money to pay them the amount they said she owed for the cocaine. Cherry, his mother, Richardson, and McClendon then drove to a tavern where McClendon had said she could obtain some money. Although the bar was closed, one of the owners let her inside to take refuge. The owner then called the police. Just before police officer Todd Engstrom arrived, Cherry returned to his car and quickly drove away. Officer Engstrom eventually caught up with Cherry and brought him to the police station.

On cross-examination, McClendon was asked about statements she made to the police on the day in question. She explained that she talked to Officer Engstrom two different times on October 21. She stated that it was possible she had not disclosed to the officer when

she first spoke to him at the bar that Cherry and the defendant had tried to force sex upon her. She remembered, however, that she told this to the officer when she spoke to him at the police station.

On further cross-examination, McClendon denied that she had reported to Engstrom that the sexual assault occurred in the kitchen of Cherry's apartment. She stated that she was not assaulted in the kitchen area while her hands were held behind her back and that she did not recall telling the police such a story. She further denied having told Officer Engstrom that she initially permitted Cherry and the defendant to fondle her breasts and vaginal area through her clothes. McClendon stated that she told Officer Engstrom that Cherry inserted his finger into her vagina, but the defendant did not. She denied telling the police that the two men had demanded $30 from her for her share of the food and cigarettes. McClendon also testified that it was the defendant who grabbed her throat and hit her on the side of her face prior to the sexual assault.

When cross-examined concerning statements she made to the police in February of 1990, McClendon acknowledged that she had stated that her friend Morrison hit her during a fight that occurred during the course of the party. On redirect examination, McClendon indicated that she incurred the scratches and bruises on and around her neck as she struggled with the defendant and Cherry.

Rock Island police officer Todd Engstrom testified that when he arrived at the tavern, McClendon told him Cherry and the defendant had been harassing her. She made no mention of a sexual assault, but Engstrom only spoke with McClendon for a few seconds before he left to apprehend Cherry.

On cross-examination, Engstrom testified that he interviewed McClendon at the police station later that day. According to Engstrom, McClendon told him she had met Cherry and the defendant outside a bar on the previous night. From there, she had gone to Cherry's apartment, where everyone but her became drunk. McClendon had further told Engstrom that she was sexually attacked in the kitchen area of the apartment. She said that she initially permitted Cherry and the defendant to fondle her breasts and vagina through her clothes, but later decided not to participate any further. She also noted that when she was attacked, she was standing. According to Engstrom, McClendon told him that both Cherry and the defendant placed their fingers in her vagina.

Engstrom further testified that McClendon claimed she was told she owed $30 for the food and cigarettes she had consumed at the party. She did not mention anyone using cocaine. McClendon also

told Engstrom that Cherry had inflicted the marks on her neck when she tried to escape after the assault. Engstrom testified that McClendon easily distinguished the two men and did not appear to confuse one for the other when she gave her statement.

On appeal, the defendant contends that he was not proved guilty of battery beyond a reasonable doubt. He points out that the complainant's trial testimony was inconsistent in many key aspects with the initial version she gave the police.

■ It is well settled that, on review of a conviction, this court must examine all the evidence in the light most favorable to the State to determine whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. (*People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.) A criminal conviction will not be set aside unless the evidence is so unsatisfactory that it creates a reasonable doubt of guilt. *People v. Vriner* (1978), 74 Ill. 2d 329, 385 N.E.2d 671.

■ After reviewing the evidence in the light most favorable to the prosecution, we conclude that the defendant's conviction must be reversed. The record reveals numerous inconsistencies between McClendon's trial testimony and the statements she made to the police. For example, McClendon told Officer Engstrom that the assault occurred in the kitchen of the apartment while she was standing. Furthermore, she stated that as the two men alternately restrained her, they both inserted their fingers into her vagina. These statements were in sharp contrast to her trial testimony that the assault occurred on a bed in the bedroom, while the defendant held her down and Cherry alone placed his finger in her vagina.

Moreover, we note that the information charged that the defendant committed a battery by fondling McClendon's breasts, buttocks, and thighs without her consent. However, Officer Engstrom testified that McClendon told him she permitted the defendant to fondle her breasts and vagina through her clothes.

The State contends that the contradictions brought out at trial were minor and collateral. We find, however, that the inconsistencies and contradictions involved here can hardly be deemed collateral or minor. Where even the room in which the alleged assault took place changed between the police interview and the trial, we find that the very existence of the incident was called into question. Under the circumstances, we conclude that the State's evidence left a reasonable doubt about the defendant's guilt.

The judgment of the circuit court of Rock Island County is reversed.

Reversed.

GORMAN, J., concurs.

JUSTICE BARRY, dissenting:

I dissent from the majority ruling that defendant was not proven guilty beyond a reasonable doubt, and most particularly, with the apparent conclusion that no rational trier of fact could have found defendant guilty. I would not characterize either the jury or the trial judge as irrational in this case.

In support of the verdict, it must be noted that the victim was very definite in her statements that defendant fondled her breasts and that he restrained her during a sexual assault by Cherry. The factual discrepancies that were present between the account she gave on the witness stand and the statement she had made to police the day of the attack were not surprising, given the emotional impact of the battery. In my view, it would have been more unusual had she related exactly the same facts on both occasions.

There were scratches on the complainant's neck which generally corroborated her story of the attack made upon her at the party. Discrepancies as to whether her attackers first touched her while in the kitchen or in the bedroom and whether a vaginal entry occurred once or twice do not render her testimony so improbable or unsatisfactory as to preclude a verdict of guilty.

Minor inconsistencies in a complainant's testimony have been held not to be grounds for reversal but rather to affect the credibility of the witness. (*People v. Du Pree* (1987), 161 Ill. App. 3d 951, 514 N.E.2d 583.) Credibility is, of course, a matter for the jury, which is in a better position than the reviewing court to assess the ability of the witness to remember and to weigh any discrepancy in the light of all the evidence. *People v. Seiber* (1979), 76 Ill. App. 3d 9, 394 N.E.2d 1044.

Here the complainant related at trial that she had participated in the use of cocaine at the party. This fact alone explains some of the discrepancies between her statement to the police and her testimony at trial. Furthermore, Officer Engstrom described the complainant as upset and excitable when he talked to her, an emotional condition that is to be expected under the circumstances.

The applicable rule is that announced in *People v. Novotny* (1968), 41 Ill. 2d 401, 412, 244 N.E.2d 182, 188:

"It is neither the duty nor the privilege of a reviewing court to substitute its judgment as to the weight of disputed evidence or the credibility of witnesses for that of the trier of fact who heard the evidence presented and observed the demeanor of the witnesses."

In light of the great deference which we as a reviewing court are required to give jury verdicts, variances in the testimony of a victim do not warrant a reversal unless the evidence is so unreasonable, improbable or unsatisfactory that there exists a reasonable doubt as to guilt. *People v. Davis* (1981), 95 Ill. App. 3d 161, 419 N.E.2d 682.

Accordingly, I would affirm the judgment of conviction entered in the circuit court.