THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LOWELL EUGENE WHITNEY, Defendant-Appellant.

(No. 74-339;

Third District—November 21, 1975.

Peel, Henning, Mathers & Bell, of Galesburg (William H. Henning and James McKee, of counsel), for appellant.

Donald C. Woolsey, State's Attorney, of Galesburg (F. Stewart Merdian, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Three years after commitment to Menard as a sexually dangerous person (Ill. Rev. Stat. 1973, ch. 38, § 105—3), defendant filed a petition for release under supervision. After a hearing, the Circuit Court of Knox County denied the petition, and defendant appeals.

Defendant was charged with deviate sexual assault upon a 79-year-old woman and, after his arrest, he admitted other forcible rape attacks upon elderly women who were in their seventies or eighties, all of which occurred while he was intoxicated. After psychiatric examinations and a hearing, defendant was declared to be a sexually dangerous person, and, on July 9, 1971, was committed to the psychiatric division of the Menard Branch of the Illinois State Penitentiary System at Menard, Illinois.

The petition for release under supervision states that it appears that defendant is no longer a sexually dangerous person, that he has received the maximum benefit from treatment available at Menard, and that is now impossible to determine with certainty under conditions of institutional care whether or not he has fully recovered. Defendant requested a release conditioned upon supervision and counseling at the Renaissance Community Center in Peoria, a "half-way house" operated by the Department of Corrections for rehabilitation of persons on parole.

During his three years of confinement, defendant received psychiatric treatment in the form of group therapy and individual counseling. Furthermore, he committed no disciplinary infractions, and had a good work record in a variety of job assignments at the institution.

At the hearing on defendant's petition, Dr. Frank Perez, a Menard staff psychiatrist who has supervised defendant's treatment, testified that defendant had made good progress; that Menard could provide no further treatment of benefit to defendant; that the time has come to "test" defendant in "real life situations"; that, although the doctor could not guarantee a complete cure, particularly with regard to defendant's previous excessive drinking problem, he believed that defendant had recovered sufficiently so as not to be a threat to the public if placed in a controlled environment.

A psychiatric evaluation by Dr. Perez was admitted in evidence, and stated:

"Mr. Whitney is not basically crime oriented. I feel that with some outside supportive counseling, plus some supervision to relieve the anxieties of the community by some parole agent, Mr. Whitney has a good chance, when compared with chronic offenders, to make a comeback in society."

A psychiatric report by Dr. Thomas Tourlentes, who had examined

defendant before commitment and again after the petition for release was filed, contained the following:

"He says that he has not used any medication in prison, and has had no particular craving for alcohol. However, he recognizes that alcohol contributed significantly to his previous difficulties, and feels he can successfully resist using alcohol as an emotional crutch again. * * *

I am impressed that Mr. Whitney has matured considerably in prison the past three years, and that he now has the inner strength to constitute a reasonable parole risk. However, this should be accompanied by adequate outpatient psychiatric supervision until it can be demonstrated that Mr. Whitney is able to sustain his improvement in an open community setting. This should be no special problem in Peoria, where there are ample resources, either through the Community Mental Health Clinic or the Zeller Zone Center. It seems entirely possible, with continued encouragement and support, that Mr. Whitney will be able to make significant and positive contributions to society in the future."

Defendant also introduced evidence concerning the Renaissance Community Center. A written description of the Department of Corrections Community Center program stated that the Department prefers that a parolee "be in fairly sound mental health or not in need of psychiatric aid * * *." and that duplication of services is avoided where the Department of Mental Health may be more "professionally adept" at providing services.

Defendant's counselor from Menard had visited the Renaissance Center in Peoria to arrange for acceptance of defendant at that facility. He testified in favor of releasing defendant to the center. At defendant's request, the trial judge stated for the record the substance of conversations with Barry Bass, superintendent of the Renaissance Center, at which the judge, the State's Attorney and the defendant's attorney were present. The judge said that two counselors live at the Center, one a social worker and one a trainee. Residents are subject to supervision by a parole officer, and are required to report in person or by telephone to a staff member every 24 hours. A progress report is made by a staff member every 30 days. In addition, defendant would have out-patient psychiatric services available at his own expense.

No alcohol is permitted on the premises, and each resident has a private room. The staff would attempt to carry out, as far as possible, any conditions imposed by the court. Furthermore, there was space available, and defendant would be accepted if released.

The trial judge also stated for the record the substance of three conversations he had with Robert Bright of the Department of Corrections concerning the possibility of releasing defendant on a work-release program. Under the Department of Corrections policy the work-release program will not accept a person who has been committed as a sexual psychopath or is "otherwise known as a sexually dangerous person." In a later conversation Bright again informed the judge that the Department would not release defendant on a work-release program and, in addition, would not release him to a State mental institution.

At the close of the hearing the judge announced his decision to deny the petition, and gave his reasons for doing so. He related a telephone conversation with a circuit judge from another county who said that in the case of another sexual psychopath released to the Peoria center, the court-imposed restrictions had not been enforced, and that he would not recommend this program for a sexual psychopath. The court then advised defendant to file a new petition in six or eight months and expressed the hope that the Department would lift their self-imposed ban on the work-release program for defendant by then.

The court order denying defendant's petition contained the following findings:

"1) That petition has not established by a preponderence [*sic*] of the evidence that he is no longer a dangerous person under Ill. Rev. Stat. Ch. 38 Sec. 105—9.

2) That there is inadequate provision by the Department of Corrections for supervision of the petitioner as would adequately protect the public."

The order also stated:

"There remains a serious question regarding the petitioner's drinking problem which seems linked to his sexually deviate behavior. The Department of Corrections expressed concern as to how the petition might react to the temptation of alcohol if released.

There was a considerable lack of evidence adduced at the hearing regarding supervision of the petitioner that would adequately protect the public. The Department of Corrections enacted a self-imposed ban on work-release programs for sexual psychopaths. The Halfway House in Peoria is the only other source of supervision for the petitioner. Since virtually no supervision is available there except a daily report procedure and no adequate treatment facilities exist for psychiatric care or alcoholics, and no provision regarding employment has been arranged for the petitioner, supervised release cannot be ordered at this time."

Defendant argues that it was mandatory that he be released under

supervision. The relevant portion of section 9 of "An Act in relation to sexually dangerous persons  * * *" (Ill. Rev. Stat. 1973, ch. 38, § 105—9) provides:

> "If the patient is found to be no longer dangerous, the court shall order that he be discharged. If the court finds that the patient appears no longer to be dangerous but that it is impossible to determine with certainty under conditions of institutional care that such person has fully recovered, the court shall enter an order permitting such person to go at large subject to such conditions and such supervision by the Director [of the Department of Corrections] as in the opinion of the court will adequately protect the public."

In *People v. Thingvold*, 113 Ill.App.2d 479, 251 N.E.2d 553, (2d Dist. 1969), this language was held to make it mandatory that the court grant a conditional release when it appears that the petitioner is no longer dangerous and that a conditional release is necessary to evaluate fully whether there has been a total recovery. The court said that to interpret the statute otherwise would enable the State to forever hold in confinement, at the sole discretion of the officers of the State, a petitioner who had been previously found to be sexually dangerous. See also *People v. Olmstead*, 32 Ill.2d 306, 205 N.E.2d 625 (1965).

In *People v. Thingvold*, at the time of the hearing in the trial court, no facilities in the nature of a "half-way house" were available for supervised release of Thingvold, but, prior to the decision in the appellate court, the parties stipulated that the Genesis House Community Center in Rockford would accept him. The appellate court remanded the cause to the trial court to hear further evidence to determine the suitability of Genesis House, and its capacity to provide a structured environment, with directions that, if the trial court finds such facility to be adequate and proper, then Thingvold should be released conditionally.

■■ We construe the holding in *Thingvold* to require a trial court to release a petitioner who appears to no longer be dangerous, but only if adequate facilities are available to provide such supervision as is found necessary to protect the public. This interpretation is consistent with the language of section 9 of "An Act in relation to sexually dangerous persons  * * *" (Ill. Rev. Stat., ch. 38, § 105—9).

The trial court here found that defendant failed to establish that he is no longer a dangerous person. A finding on this question would be necessary if defendant were seeking an absolute discharge. However, defendant conceded in his petition that it cannot be established that he is no longer dangerous while he is confined in an institutional environment.

The issue confronting the trial court, and on which no finding was made, was whether it *appears* that defendant is no longer dangerous but that it is impossible to determine with certainty under conditions of institutional care. A finding on the latter question was necessary before the court could consider whether the Renaissance Center would be. adequate.

Defendant contends that the manifest weight of the evidence clearly shows that he appears to be no longer dangerous, and asks this court to order his conditional release.

■■ After considering all of the circumstances in this case, we believe that the finding required by the petition should be made by the trial court who observed the witnesses while testifying and is in a position superior to a court of review to determine credibility and, after weighing the evidence, to decide whether defendant established by a preponderance of the evidence that it appears he is no longer dangerous. (*Cf. People v. Beksel*, 10 Ill.App.3d 406, 294 N.E.2d 111 (2d Dist. 1973).) Therefore, this cause must be remanded.

Defendant also contends that, if the court finds that he appears to be no longer dangerous, and if no facilities are available other than Renaissance Center, then the court must release him to the center. We disagree. The statute places upon the trial court the burden of imposing conditions and supervision to "adequately protect the public." Here there is medical evidence that defendant requires "out patient psychiatric supervision," "supportive counseling," and "a controlled environment." From the record, the evidence is contradictory as to whether such services could be adequately provided if defendant is released to the center.

■■ The court found that general supervision at the center would be inadequate to protect the public. While this was supported by some evidence, we believe it was not proper for the trial judge to base his decision in part on a telephone conversation he held with another judge. Unlike other out-of-court conversations stipulated to by defendant, the advice of a judge from another county was not a part of the evidence before the court. Therefore, the evidence concerning adequacy of available protection for the public must also be reconsidered and a new finding of fact made by the trial judge.

Since new findings are required, and since more than a year has elapsed since the hearing, we consider a new trial to be necessary. Retroactive determination of mental condition is inappropriate here, just as it has been held to be in those cases involving fitness to stand trial. See *People v. Thompson*, 36 Ill.2d 332, 223 N.E.2d 97 (1967).

■■ We share the concern of the trial judge that the Department of

Corrections has refused to make its work-release program available to persons in the situation of this defendant. If the only facility available to implement the legislative provision for conditional release is not suitable for persons in need of assistance in making the transition from Menard to freedom, then the courts are presented with the dilemma of either releasing a person who may be dangerous to the public, or of requiring the State to perpetuate confinement indefinitely. Transfer of a sexually dangerous person from the psychiatric division of the penitentiary to the general division of the penitentiary as a transitional step is not permitted under the statute. *People v. Shiro*, 52 Ill.2d 279, 287 N.E.2d 708 (1972).

We believe the Illinois Sexually Dangerous Persons Act reflects an enlightened and humane view that persons suffering from a mental illness must be treated and rehabilitated and returned to society. Some States require a released defendant to stand trial on the pending criminal charges, or, to be transferred to the penitentiary to begin or complete the sentence imposed for the criminal charges. (See 41 Am. Jur. 2d *Incompetent Persons* § 54 (1968).) In Illinois the criminal charges are quashed when defendant is discharged.

Some States require confinement of a sexually dangerous person until complete recovery, even when full recovery can never be expected. (*State v. Braggs*, 9 Ohio Misc. 32, 221 N.E.2d 493 (Juv. Ct. Cuyahoga County 1966); *State v. Noll*, 171 Neb. 831, 108 N.W.2d 108 (1961).) Although treatment is one of the purposes of the Illinois statute, like other jurisdictions, our legislature has also recognized the necessity of protecting society from persons whose mental state would endanger the public. (See *Humphrey v. Cady*, 405 U.S. 504, 31 L.Ed.2d 394, 92 S.Ct. 1048, 1052 (1972).) The balancing of these two purposes is a matter committed to the discretion of the trial court. *State v. Noll*.

A different situation is presented when sentencing an accused on criminal charges. Then a court must utilize the institutions provided by the Department of Corrections without weighing their adequacy. However, as the instant case demonstrates, conditional release of a person committed as sexually dangerous can be granted only after the trial court finds that available facilities will adequately protect the public.

In accordance with the views expressed herein, we reverse and remand for a new hearing on defendant's petition for conditional release.

Reversed and remanded.

ALLOY, P. J., and BARRY, J., concur.