THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LOWELL EUGENE WHITNEY, Defendant-Appellee.—(ILLINOIS DEPARTMENT OF CORRECTIONS, Petitioner-Appellant.)

Third District    No. 76-246

Opinion filed March 21, 1977.

Donald R. Schuering, of Quincy, for appellant.

William Henning, of Peel, Henning, Mathers & Bell, of Galesburg, for appellee Lowell Whitney.

Mr. PRESIDING JUSTICE STENGEL delivered the opinion of the court:

In 1971 defendant Lowell Eugene Whitney was committed to the Menard Branch of the Illinois State Penitentiary System, pursuant to the Sexually Dangerous Persons Act (Ill. Rev. Stat. 1975, ch. 38, par. 105—1.01 *et seq.*), after he had admitted attacking and forcibly raping several elderly women. In 1974 defendant petitioned the Circuit Court of Knox County for release under supervision. The trial court denied the petition, and on appeal we reversed and remanded for a new hearing on the petition. (*People v. Whitney* (3d Dist. 1975), 33 Ill. App. 3d 729, 338 N.E.2d 233.) A new hearing was held; the trial court granted the petition, and ordered defendant transferred to the Joliet Work Release Center at Lockport, Illinois, for one year. After that order was entered, the Illinois Department of Corrections was given leave to intervene, but the Department's motion to set aside the order was denied.

The Department appeals, contending that defendant's transfer to the Joliet Work Release Center was improper. In support of its position, the Department argues that defendant does not meet the criteria for transfer

to the Center and that the authority to assign persons to particular correctional institutions is vested in the Department by statute.

In order to place these issues in proper context, it is necessary to summarize the relevant facts relating to the first appeal. Defendant's original petition sought release to the Renaissance Community Center in Peoria, a "half-way house" for parolees, which provided minimal supervision. Such petitions for release are governed by section 9 of the Act which provides:

"If the patient is found to be no longer dangerous, the court shall order that he be discharged. If the court finds that the patient appears no longer to be dangerous but that it is impossible to determine with certainty under conditions of institutional care that such person has fully recovered, the court shall enter an order permitting such person to go at large subject to such conditions and such supervision by the Director [of the Department of Corrections] as in the opinion of the court will adequately protect the public." Ill. Rev. Stat. 1975, ch. 38, par. 105—9.

At the original hearing, there was uncontradicted medical testimony that defendant appeared no longer to be dangerous but that he needed supervision until he demonstrated his ability to sustain his improvement in the open community. However, the trial court found that defendant had failed to establish that he was no longer dangerous, and also found that the Department could not provide adequate supervision to protect the public. In denying the petition, the trial court noted that defendant's sexually dangerous behavior was linked to a drinking problem and questioned how defendant might react to the temptation of alcoholic beverages if released. In commenting on the problem confronting the trial court, we said:

"We share the concern of the trial judge that the Department of Corrections has refused to make its work-release program available to persons in the situation of this defendant. If the only facility available to implement the legislative provision for conditional release is not suitable for persons in need of assistance in making the transition from Menard to freedom, then the courts are presented with the dilemma of either releasing a person who may be dangerous to the public, or of requiring the State to perpetuate confinement indefinitely." 33 Ill. App. 3d 729, 734-35, 338 N.E.2d 233, 238.

Prior to the hearing now before us, defendant subpoenaed Allyn R. Sielaff, Director of the Department of Corrections, as a witness. At the Department's request, defendant consented to substitute as a witness Jay Leatherman, Regional Administrator for Adult Field Services for the

Department, who supervises all parole, half-way house, prerelease, and work-release programs in 16 counties in northern Illinois.

Leatherman stated categorically that defendant would be accepted by the Department at the Joliet Work Release Center in Lockport under the Sexually Dangerous Persons Act, and testified at length as to the details of the work-release program, the close supervision and other measures which protect the public, and the services available to help defendant make the transition from a maximum security institution to parole supervision. He stated that defendant would be the first "sexually dangerous" person admitted to the work-release program, and that plans had already been made for defendant to receive outpatient psychiatric counseling at the Will County Psychiatric Center in Joliet. Leatherman testified that the present criteria for persons entering the work-release program keep out only Class 1 felons, and that the Department's work-release centers are no longer limited to "mittimus cases" but are now available for "anybody that needs a community reintegration program."

The psychiatrist who has treated defendant at Menard testified as to defendant's progress and his improved condition, and also expressed the opinion that the Joliet Work Release Center would meet defendant's needs and would also adequately protect the public. In addition, the court heard testimony from defendant and his Menard counselor, all of which was favorable to releasing defendant to the Joliet Center.

In the order granting release under supervision, the court found that "defendant appears no longer to be dangerous but it is impossible to determine with certainty under conditions of institutional care that the defendant has fully recovered." The court imposed certain conditions for the protection of the public including that defendant remain at the Center for one year, that he have a psychiatric consultation twice a month, that he not consume any alcoholic beverages, that he not enter Knox County, that the Department make a monthly report to the court, and that defendant appear before the court one year from the date of the order for a hearing on his progress and consideration of release under parole supervision.

■■ We have carefully scrutinized the record, and conclude that the evidence fully supported defendant's transfer to the Joliet Center. There was uncontradicted testimony that defendant met the Department's criteria for the work-release program, that the Joliet Center would provide adequate protection for the public, and that the Joliet Center was prepared to receive defendant and could meet any conditions imposed by the trial court. The facts established at trial were so overwhelmingly in favor of defendant's transfer to the Joliet Center that any other disposition would have been questionable.

■■ Apparently the Department is now attempting to repudiate the testimony of Leatherman who appeared as a Department official and who purported to represent Director Sielaff. The record does not reveal what bureaucratic machinations have led the Department to adopt its present stance. An intervenor must take the suit as he finds it, and may not raise new issues. (*Hurley v. Finley* (4th Dist. 1955), 6 Ill. App. 2d 23, 126 N.E.2d 513.) Furthermore, where a fact is admitted in the trial court, it cannot be contested on appeal. (*Houdek v. Ehrenberger* (1947), 397 Ill. 62, 72 N.E.2d 837.) The Department cannot now deny that defendant meets the criteria for the Joliet Center when its official representative in the trial court testified to the contrary.

■■■ The Department also contends, for the first time on appeal, that the trial court lacked authority to specify the institution to which defendant is to be transferred. That argument must fail for two reasons. First, a reviewing court will not consider an issue which was not presented for determination by the trial court. (*Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 324 N.E.2d 417.) Second even if the issue were properly before us, the Department's contention ignores section 9 of the Sexually Dangerous Persons Act which vests power in the court to require conditions and supervision by the Department of persons released under the Act. That particular provision must prevail over the general power of the Department to assign persons to institutions under the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1003—2—2(b)). It is well settled that a particular enactment is operative as against general provisions on the subject. *People ex rel. Goodman v. Wabash R.R. Co.* (1946), 395 Ill. 520, 540, 70 N.E.2d 718; *Mills v. County of Winnebago* (2d Dist. 1969), 104 Ill. App. 2d 366, 244 N.E.2d 65.

In accordance with the views expressed herein, we affirm the order of the trial court.

Affirmed.

ALLOY and BARRY, JJ., concur.