THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, v. JESSIE LEE DeMONT, Respondent-Appellant.

Third District   3—85—0666

Opinion filed August 12, 1986.

438

Verlin R. F. Meinz, of State Appellate Defender's Office, of Ottawa, for appellant.

Larry VanDerSnick, State's Attorney, of Cambridge (Terry A. Mertel, of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE HEIPLE delivered the opinion of the court:

Respondent, Jessie Lee DeMont, was charged by information in the circuit court of Henry County with the offenses of attempted aggravated kidnaping and indecent solicitation of a child. (Ill. Rev. Stat. 1983, ch. 38, pars. 10—2(a)(2), 11—6(a)(2).) Following a preliminary hearing, the court found probable cause to hold respondent for trial. Subsequently, the State filed an altogether different petition to have DeMont declared a sexually dangerous person (Ill. Rev. Stat. 1983, ch. 38, par. 105—1.01). Although the proceedings to commit a person as a sexually dangerous person fall under the criminal code, they are somewhat of a legal hybrid. This is so because the relevant statute pronounces that the proceedings are civil in nature but that the burden shall be as in a criminal case. Ill. Rev. Stat. 1983, ch. 38, par. 105—3.01.

Instead of a trial on the criminal information, the trial court ordered a psychiatric examination of the respondent and held a bench trial on the dangerousness petition. As a result, respondent was declared a sexually dangerous person and committed to the Department of Corrections. The Director of the Department of Corrections was appointed guardian of the person of Jessie Lee DeMont and was ordered to keep the respondent safely until such time as it appears he is no longer a sexually dangerous person. The Director was further ordered to provide care and treatment of the respondent to help effect respondent's recovery.

Respondent presents three issues for our review: (1) whether the Sexually Dangerous Persons Act (Ill. Rev. Stat. 1983, ch. 38, par. 105—12) excludes the legally insane from its coverage; (2) whether the trial court erred in processing respondent under the Act since there is uncontradicted evidence that respondent's mental disorder is incurable, a condition which respondent contends is at odds with the treatment-oriented purpose of the Act; and (3) whether *Miranda* warnings are required before a respondent may be examined by a psychiatrist pursuant to a court order in a sexually dangerous person proceeding.

Five witnesses testified for the State.

Tim Perkins, an investigator for the Henry County sheriff's department, testified that he first became acquainted with DeMont when respondent was being held in custody on an earlier indecent liberties charge. Perkins related that since then, the department had received numerous complaints concerning the respondent's conduct. Both a local school district and the school's bus service had complained of respondent's loitering in the school yard and near school bus stops. Perkins further testified that on May 23, 1985, he arrested respondent following a report to the sheriff's department by Sue Schatteman. According to Investigator Perkins, Mrs. Schatteman reported that her daughter had been accosted while waiting for the school bus by a man in a white station wagon who had asked her to get in the wagon with him. Based on information supplied by Mrs. Schatteman and by a school bus driver who witnessed the incident, Perkins arrested the respondent. After being given *Miranda* warnings, respondent informed Perkins that he had never intended to hurt the Schatteman girl. He had merely wanted to tell her and the other children about an upcoming carnival. After respondent's arrest he was taken to the Henry County jail. A later strip search disclosed that respondent was wearing a pair of ladies red silk underwear.

Jacqueline Ann Russell followed Perkins to the stand. Russell was the school bus driver whose route had placed her at the scene of the alleged misconduct. She testified that, on occasion, respondent had driven slowly in front of her bus, forcing her to brake to avoid a collision. On still other occasions, he had pretended to masturbate and make obscene gestures when Russell drove by with her bus full of children. Russell testified that she was driving on the date in question when she saw respondent stop his car near Sommer Schatteman and speak to her. Sommer is Mrs. Schatteman's six-year-old daughter. Russell stated that as the school bus approached, the respondent sped away.

Sommer and her mother provided the court with the details of

Sommer's encounter. Around 7:30 in the morning, Mrs. Schatteman had sent her daughter down the driveway to wait for the bus. The bus stop was visible from their house. Mrs. Schatteman saw a white station wagon stop near Sommer. Sommer testified a middle-age man with grey hair opened his car window, told her it was warm inside and offered to drive her to school. Sommer told the man "no" and, becoming scared, ran back toward her house. Mrs. Schatteman testified that she saw all this from the house.

The pivotal witness to testify was Dr. Robert M. Edwards. Dr. Edwards was one of two psychiatrists ordered to examine the respondent. Dr. Edwards was the only psychiatrist with whom the respondent had cooperated. In Dr. Edwards' opinion, respondent suffered from the mental disorder of pedophilia. Pedophilia is defined as a sexual preoccupation with preadolescent girls manifested by a compulsive acting out of sexual desire. Respondent's condition was the result of a nonpsychotic organic brain syndrome. This condition had been caused by a severe head injury with frontal-lobe brain damage. Damage to this area of the brain left the respondent still technically able to know where he was and to meet the concrete demands of day-to-day living but severely impaired his social judgment. The respondent saw nothing wrong with asking a preadolescent girl to have sexual relations with him. Dr. Edwards noted that respondent generally understood the charges against him but could not understand why anyone was upset, since respondent had neither harmed nor intended to harm Sommer Schatteman. Given the respondent's two conditions, pedophilia and organic brain syndrome, Dr. Edwards opined respondent was a sexually dangerous person.

Formal evidence in the case concluded with the introduction of a certified copy of respondent's previous conviction for indecent liberties with a child. A copy of Dr. Edwards's formal report was also admitted into evidence. The report noted, *inter alia,* that "no amount of therapy has had or will have any effect on [respondent's] behavior."

The first issue before this court is whether the Sexually Dangerous Persons Act excludes insane persons from its coverage. Respondent contends that his mental disorder, in particular, his inability to appreciate the criminality of his preference for preadolescent girls, places him within the legal definition of insanity. And insane persons, he claims, are excluded from coverage under the Act. We disagree.

■ Section 1.01 of the Act defines sexually dangerous persons as follows:

> "All persons suffering from a mental disorder, which mental disorder has existed for a period of not less than one year, im-

mediately prior to the filing of the petition hereinafter provided for, coupled with criminal propensities to the commission of sex offenses, and who have demonstrated propensities toward acts of sexual assault or acts of sexual molestation of children, are hereby declared sexually dangerous persons." Ill. Rev. Stat. 1983, ch. 38, par. 105—1.01.

The predecessor of this Act was the Criminal Sexual Psychopath Act. It provided that:

"All persons suffering from a mental disorder, and not insane or feebleminded, which mental disorder has existed for a period of not less than one year, immediately prior to the filing of the petition hereinafter provided for, coupled with criminal propensities to the commission of sexual offenses, are hereby declared to be criminal sexual psychopathic persons." (Ill. Rev. Stat. 1949, ch. 38, par. 820.)

It is significant to note that the statutory definition of a sexually dangerous person is essentially identical to the prior definition of criminal sexual psychopath except that the current definition of sexually dangerous persons no longer exempts the insane and feebleminded from coverage. It is well settled that when a statute is amended it is presumed that the legislature intended to effect some change in the law as it formerly existed. (*People v. Youngbey* (1980), 82 Ill. 2d 556, 563.) Thus, when the legislature removed the language from the Criminal Sexual Psychopath Act exempting the insane from coverage, it effectuated a change so that the insane would be included in the Sexually Dangerous Persons Act.

■ The respondent also argues that the Sexually Dangerous Persons Act excludes the legally insane by definition. Respondent reasons that the Act is inapplicable because an insane person is specifically relieved of criminal responsibility for his conduct. By definition then, respondent claims an insane person cannot harbor criminal propensities, be disposed toward committing sex crimes or demonstrate such propensities by committing the crimes of sexual assault or molestation of children. Once again, we disagree.

While a finding of insanity may shield a defendant from criminal sanctions for his conduct, the act committed may still be criminal. That is to say, a crime may be committed by an insane person. The fact that the insane person may not be held legally accountable for his crime is not the point. A rape is a rape and a murder is a murder. When the law returns a finding that a defendant is not guilty by reason of insanity, the law does not say that a crime has not been committed. It merely says that the insane defendant cannot be held guilty

of a crime by reason of his insanity. That is all.

Next, respondent argues that his incurable and untreatable mental condition renders his commitment untenable because the Sexually Dangerous Persons Act is aimed at treatment and his condition is untreatable. Defendant, for this argument, relies on section 8 of the Act, which obliges the Director of Corrections to keep the person until he has recovered and to provide care and treatment designed to effect his recovery. (Ill. Rev. Stat. 1983, ch. 38, par. 105—8.) This language is directed to the Director of Corrections and defines the duties of the Director of Corrections regarding the person who has been committed to his custody. It is not an exemption for the respondent and it does not define the mental state that will result in his commitment. The language as to the mental state which mandates commitment is completely set out in section 1.01 above. If it is true that the respondent is a sexually dangerous person and if it is further true that this condition is not treatable and that cure can never be accomplished, then it would appear that respondent is destined to spend the rest of his life under this commitment. The language of the statute directing the Director of Corrections to keep the person in custody until he has recovered does not exclude the possibility that the person may never recover. Whether such circumstance will in fact occur remains to be seen. Only time will tell. It has previously been determined that such an indefinite commitment does not violate the eighth amendment's prohibition against cruel and unusual punishment. (*People v. Sly* (1980), 82 Ill. App. 3d 742, 749.) At least, while in such confinement, the public will be protected from the respondent's sexually dangerous propensities. That is a sufficient basis for his continued confinement under the law. If it should develop that the defendant can be "treated" and that such "treatment" may ultimately effectuate a cure, such events will indeed be fortuitous for both the respondent and the public. If such events do not occur, the public, at least, is protected. Protection of the public is one of the purposes of the Act (*People v. Allen* (1975), 107 Ill. 2d 91, 102) and, in our judgment, probably the primary purpose.

The Illinois Sexually Dangerous Persons Act reflects an enlightened view toward institutional commitment. Illinois, unlike other States, does not require a released defendant to stand trial on the underlying criminal charges, or, to be transferred to the penitentiary to begin or complete a sentence. In Illinois, the criminal charges are quashed when a defendant is discharged. More to the point, some States require a confinement until complete recovery. (*People v. Whitney* (1975), 33 Ill. App. 3d 729, 735.) In Illinois, a person is only con-

fined until it appears he is no longer dangerous. Thus, it is not required that a sexually dangerous person show that he has recovered from his prior condition. *People v. Shiro* (1972), 52 Ill. 2d 279, 283.

A person who has been committed as a sexually dangerous person has a number of legislatively created rights. First, when a patient files, in the committing court, a petition setting forth facts showing his recovery, that court must determine whether he should be released. (Ill. Rev. Stat. 1983, ch. 38, par. 105—9.) A patient seeking release has the right to court-appointed counsel. Upon request, a jury will determine the merits of a petitioner's claim. Ill. Rev. Stat. 1983, ch. 38, par. 105—5.

■ If, after all of the evidence has been heard, the patient is found to be no longer dangerous, the court must order his discharge. If the court finds that the patient appears no longer to be dangerous but that it is impossible to determine with certainty under conditions of institutional care that such person has fully recovered, the court shall grant conditional release. This order is only granted under such conditions as, in the opinion of the court, will protect the public. (Ill. Rev. Stat. 1983, ch. 38, pars. 105—9, 105—10.) The fact that conditional release will not be granted if the public cannot be protected further supports our judgment that protection is the primary purpose of the Act.

■ Finally, respondent argues that Dr. Edwards' psychiatric opinion was improperly admitted because it violated respondent's privilege against self-incrimination. The recent case of *People v. Allen* (1985), 107 Ill. 2d 91, which was affirmed by the United States Supreme Court in *Allen v. Illinois* (1986), 478 U.S. ___, 92 L. Ed. 2d 296, 106 S. Ct. 2988, is controlling on this issue. *Allen* holds that there is no privilege against self-incrimination in a sexually dangerous person proceeding. 107 Ill. 2d 91, 101-03.

Accordingly, for the reasons set forth, the adjudication of the circuit court of Henry County is affirmed.

Affirmed.

STOUDER and WOMBACHER, JJ., concur.