THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
FRANCIS T. HANNAN, JR., Defendant-Appellant.

First District (3rd Division)   No. 1—87—2545

Opinion filed June 21, 1989.

Dennis P. Ryan and Luis A. Berrones, both of Gardner, Carton & Douglas, of Libertyville, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, Marie Quinlivan Czech, and Linda S. Halperin, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE FREEMAN delivered the opinion of the court:

Defendant appeals from an order of the circuit court denying his petition for discharge from the custody of the Director of the Department of Corrections, pursuant to section 9 of "An Act in relation to sexually dangerous persons ***" (the Act) (Ill. Rev. Stat. 1987, ch. 38, par. 105—9). Defendant contends that the trial court erred by denying his petition because he provided the court with sufficient evidence for it to conclude that he appeared to be no longer sexually dangerous, although it was impossible to determine with certainty under conditions of his present institutional case. Defendant also claims that it was mandatory for the court to release him upon the condition that he participate in a plan or course of conduct devised for him to help assure the protection of the public.

The State argues that the trial court did not err by denying defendant's petition because it properly found that defendant was still a sexually dangerous person. However, the State also argues that, even if there was sufficient evidence to find that defendant no longer appeared dangerous, defendant's release was not mandatory because the court found that the release plan devised by the Menard Psychiatric Center was inadequate to protect the public.

In his reply brief, defendant counters that making his release dependent upon his ability to formulate a release plan that is unobjectionable to the court, when the type of semi-structured facilities found necessary by the court are unavailable, renders the statute unconstitutional.

The record reveals that in May 1982, defendant surrendered himself to Chicago police and confessed his involvement in three sexual assaults of women who resided at a Chicago college campus. Defendant was later charged with two counts of rape (Ill. Rev. Stat. 1981, ch. 38, par. 11—1), one count of attempt (Ill. Rev. Stat. 1981, ch. 38, par. 8—4), and three counts of home invasion (Ill. Rev. Stat. 1981, ch. 38, par. 12—11(a)(2)). However, defendant then petitioned for commitment under the Act (Ill. Rev. Stat. 1981, ch. 38, par. 105—1 et seq.) and was found to be a sexually dangerous person as defined by section 1.01 of the Act. He was then committed to the custody of the Director of the Department of Corrections.

On December 15, 1986, defendant filed a petition seeking his discharge pursuant to section 9 of the Act. A hearing was held on July 15, 1987, at which Michael Dolan, defendant's supervising psychologist at the Menard Psychiatric Center, testified in support of defendant's petition. Dolan stated that he had been involved in defendant's

treatment since his commitment to the facility in 1982 and that defendant's therapy, in general, consisted of group sessions three times each week for a total of six hours each week. Based on these contacts with defendant, Dolan felt that defendant had now resolved the issues that contributed to his sexual offense to the point where there was a reasonable expectation that defendant could function in the community without choosing to sexually offend again. Dolan categorized his confidence level in defendant's rehabilitation at the 96 percentile. However, he conditioned his recommendation for defendant's discharge upon defendant's cooperation and participation in a continued treatment plan. The release plan devised for defendant required: (1) full-time employment or vocational training, specifically, defendant's enrollment at Southern Illinois University and residence within the campus area; (2) no relocation without the notification of and approval by the Department of Corrections; (3) intensive supervision through parole services; (4) absolute abstention from all drugs and alcohol with enforcement assured by the voluntary use of Anabuse; and (5) continued outpatient therapy.

Dolan acknowledged that defendant's previous assaults had occurred at a college campus, yet he maintained that the safety of the public could be reasonably assured even though defendant would be thrust from an intensely structured environment to an unsupervised setting of an apartment or dormitory. Dolan indicated that defendant had no major infractions at Menard, that he had been allowed to work in areas outside the confines of the facility and that he had participated in fishing trips.

The second witness was Dr. Sam Parwatikar, who was a board-certified psychiatrist at the Menard Psychiatric Center. He testified in support of defendant's petition. Dr. Parwatikar became the supervisor of the sexual-offender program in 1985 and became involved with defendant at that time. Since March 1985, Dr. Parwatikar saw defendant once each month for a 15- to 30-minute session. He stated that, in his opinion, defendant understood some of the problems related to his childhood conflicts that cause him to sexually offend and that defendant also understood the importance of avoiding drugs and alcohol which lowered his inhibitions and, thus, contributed to his offenses. Therefore, Dr. Parwatikar felt that he could recommend that defendant be released to a semi-structured environment contingent upon his continued participation in therapy.

Dr. Parwatikar acknowledged that there were no "half-way" facilities that could provide defendant with a semi-structured environment and that defendant felt he would need such a facility. However, he

stated that he had reviewed the plan devised for defendant and "felt comfortable" with the criteria set forth in the plan. Dr. Parwatikar also admitted that there were no guarantees that defendant would not sexually offend again or that defendant would refrain from using drug and alcohol. In addition, Dr. Parwatikar stated that defendant could still be sexually dangerous if he was not able to understand the reasons for his behavior and that this was the reason that continued therapy was necessary. In explanation, Dr. Parwatikar stated that defendant had been able to put some of his past sexual behaviors and experiences into perspective based upon an understanding of his childhood conflicts. However, because life is dynamic, once in the community and constantly confronted with new situations, defendant would need to resolve those conflicts in the context of these new situations. Furthermore, Dr. Parwatikar admitted that it was more than likely that defendant still experienced sexual fantasies about rape.

The hearing was then adjourned for several weeks so that defendant could be evaluated by a court-ordered psychiatrist. When the hearing reconvened on August 4, 1987, Michael Dolan was recalled. Dolan testified that there had been much adverse publicity regarding the case and, for this reason, the release of defendant to Southern Illinois University was now contraindicated because defendant would have difficulty adjusting to the intense hostility. Therefore, Dolan suggested that the earlier release plan should be amended to reflect this change in circumstances. He stated, however, that he still felt that defendant should be released to an unsupervised setting, such as off-campus housing at another university where meals would be provided and utilities paid. However, he admitted that no definite plan was in place and presently there was no place for defendant to live upon his release except for his parents' home, which might be less than ideal. Dolan also admitted that, based on defendant's history, there was a high probability that defendant, in an unsupervised setting, would return to drug and alcohol use when confronted with outside pressures. Furthermore, Dolan admitted that due to heavy caseloads and reductions in positions, even intensive parole services would provide only weekly intervention. Furthermore, the outpatient treatment plan, which was to be provided by the Chester Mental Health facility, had not been formulated at that time.

The court also received into evidence the written report of Dr. Albert H. Stipes, a staff psychiatrist at the Psychiatric Institute of the circuit court of Cook County. This report merely indicated that the court-ordered examination revealed that defendant did not appear to be dangerous but that it was not possible to determine with certainty

under conditions of institutional care. This was the only evidence presented by the State.

At the close of the hearing, the court denied defendant's petition. Although the court stated that "I do not find at this time that this individual is not sexually dangerous," the court indicated that the conditions set forth in the release plan did not adequately assure the protection of the public. Therefore, until a better release plan was formulated, the petition would be denied.

On appeal, defendant argues that the court's determination that he continues to be a sexually dangerous person was against the manifest weight of the evidence. Defendant argues that all the evidence indicated that he appeared to no longer be dangerous and, thus, his release was mandatory. Defendant also argues that his continued commitment to the custody of the Department of Corrections, when it appears that he is no longer a sexually dangerous person, is a violation of his constitutional rights and that the burden of formulating a sufficient release plan should not fall upon him but, rather, upon the State.

The State argues that there was sufficient evidence to support the court's ruling that defendant continued to be a sexually dangerous person. Furthermore, even if there was sufficient evidence for the court to find that defendant appeared to no longer be dangerous, defendant's release was not mandatory. Rather, the State contends that defendant's release was contingent upon the development of a release plan that would adequately assure the protection of the public.

Section 9 of the Act (Ill. Rev. Stat. 1987, ch. 38, par. 105—9) states in pertinent part:

> "If the patient is found to be no longer dangerous, the court shall order that he be discharged. If the court finds that the patient appears no longer to be dangerous but that it is impossible to determine with certainty under conditions of institutional care that such person has fully recovered, the court shall enter an order permitting such person to go at large subject to such conditions and such supervision by the Director as in the opinion of the court will adequately protect the public."

The statute, therefore, creates two categories of individuals. The first category involves those individuals who may be released from commitment upon a showing by a preponderance of the evidence that they are no longer sexually dangerous. (*People v. Parrott* (1982), 108 Ill. App. 3d 222, 438 N.E.2d 1313.) The second category involves those individuals who may show by a preponderance of the evidence that they appear to no longer be dangerous but that it is impossible to

determine with certainty while they remain within the institutional setting. (*People v. Whitney* (1975), 33 Ill. App. 3d 729, 338 N.E.2d 233.) Thus, a person who has been determined to be a sexually dangerous person need not show that he has completely recovered before he may be granted a discharge from custody pursuant to the statute. *People v. Shiro* (1972), 52 Ill. 2d 279, 287 N.E.2d 708.

In the present case defendant did not petition for absolute discharge upon the contention that he had fully recovered. Instead, defendant petitioned for conditional discharge alleging that he appeared to no longer be dangerous but that it was impossible to determine with certainty while he remained at Menard. Thus, the trial court's determination that "I do not find at this time that this individual is not sexually dangerous" did not properly address the issue. (*People v. Whitney*, 33 Ill. App. 3d at 733-34.) The issue before the trial court was whether it appeared that defendant was no longer dangerous. *People v. Whitney*, 33 Ill. App. 3d at 734.

Our review of the record and the trial court's ruling convinces us that the trial court, in essence, found that defendant appeared to no longer be dangerous and that the manifest weight of the evidence supported such a finding. However, the trial court denied defendant's petition based on the inadequacy of the release plan. Therefore, the real issue before this court is whether release is mandatory upon a determination that defendant no longer appears to be sexually dangerous and whether defendant must carry the burden of devising a release plan that will be sufficient to assure the protection of the public.

In *People v. Thingvold* (1969), 113 Ill. App. 3d 479, 251 N.E.2d 553, and *People v. Richardson* (1975), 32 Ill. App. 3d 621, 335 N.E.2d 619, cases relied upon by defendant, the courts held that conditional release was mandatory upon a finding that the defendant appeared to no longer be dangerous. However, in both of those cases the causes were remanded to the trial court for a determination on the adequacy of the facilities to which the defendants would be released. Thus, in *People v. Whitney* (1975), 33 Ill. App. 3d 729, 733, 338 N.E.2d 233, the court construed the holding in *Thingvold* to require a trial court to release a defendant who appeared to no longer be dangerous "only if adequate facilities are available to provide such supervision as is found necessary to protect the public." This interpretation of the statute has been consistently upheld. *People v. Parrott* (1982), 108 Ill. App. 3d 222, 438 N.E.2d 1313; *People v. DeMont* (1986), 146 Ill. App. 3d 437, 496 N.E.2d 1215.

Furthermore, the burden of proof is on the defendant to show that he may be conditionally released without endangering the public,

although the Department of Corrections may be required to cooperate with the defendant in good faith to attempt to formulate a plan that will provide for his conditional release, treatment and supervision. Therefore, if the Department assists defendant in devising a plan but no facility is available to the defendant that will provide the type of supervision necessary to assure the protection of society, then defendant's release is not mandatory. (*People v. Parrott*, 108 Ill. App. 3d at 226.) This is because protection of the public is the primary purpose of the statute. *People v. DeMont*, 146 Ill. App. 3d at 443-44.

■ In the present case, the release plan devised for defendant with the assistance of Menard Psychiatric Center recommended that defendant secure full-time employment or seek vocational training. Enrollment in Southern Illinois University was discussed, and apparently defendant obtained admission to this university and secured grants for financial assistance. However, attendance at Southern Illinois University later became contraindicated due to adverse publicity, and no definite alternative plan was formulated for defendant. It was mentioned that defendant could transfer his admission and grants to another State university, but no concrete plans for such an alternative were set forth. In addition, it was pointed out that defendant desired to enter a semi-structured environment upon his discharge, but no facility was available. The alternative suggested by Menard was off-campus housing or dormitory residence. But again, no concrete arrangements were set forth. In fact, it was shown that defendant had no place to live, if discharged, except his parents' home. Furthermore, no relatives testified that even this alternative was available to defendant. Additionally, there was some indication that return to his parents' home was not a viable alternative for defendant due to clinical reasons.

Finally, there was abundant evidence that defendant required supervision and continued treatment to assure that he refrain from drug and alcohol use and assist him in coping with the new situations he would encounter upon release. Despite this fact no definite outpatient treatment plan had been formulated for defendant. The abstract references to outpatient counseling and parole services' supervision were too nebulous to be considered a sufficient plan to assure the protection of the public. Therefore, we agree with the trial court that defendant's petition for conditional discharge should be denied based upon the inadequacy of the release plan.

■ We are also unpersuaded by defendant's argument that our construction of the conditional-release provision of the Act renders it unconstitutional. Initially, we note that it is unclear on what basis

defendant claims that his constitutional rights would be violated by construing the Act to require him to provide an adequate release plan. Defendant cites *O'Connor v. Donaldson* (1975), 422 U.S. 563, 45 L. Ed. 2d 396, 95 S. Ct. 2486, to support his constitutional claim. But in *O'Connor*, a Florida mental patient brought a Federal civil rights action for damages against the mental institution's superintendent. He alleged that the superintendent had intentionally and maliciously deprived him of his constitutional rights to liberty when his frequent requests for release over a period of 15 years were rejected, despite the fact that he was not a danger to himself or others, and responsible parties had come forward and agreed to care for him. The Court held that a State cannot constitutionally confine a nondangerous individual who was capable of functioning safely within the community by himself or with the help of willing and responsible family and friends. Thus, we find *O'Connor* distinguishable both legally and factually from the case at bar.

Finally, we note that the burden of proof is on the defendant to show by a preponderance of the evidence that he is no longer dangerous. (*People v. Parrott* (1982), 108 Ill. App. 3d 222, 438 N.E.2d 1313.) Thus, if the only way that a defendant may prove that he is no longer dangerous is to seek conditional release to afford himself the opportunity to show that he can function in society, it is reasonable to require defendant to show by a preponderance of the evidence that the public will not be endangered during his conditional release. Such a requirement should not offend defendant's constitutional rights to due process since the State has a legitimate interest in protecting its citizens from an individual who has been shown to be dangerous to society. See *In re King* (1983), 114 Ill. App. 3d 346, 448 N.E.2d 887 (where petitioner sought unconditional release from an involuntary mental health commitment).

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

WHITE and CERDA, JJ., concur.